# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DISABILITY RIGHTS CONNECTICUT,
   INC., on behalf of its constituents,

               Plaintiff,

          v.

CONNECTICUT DEPARTMENT OF
   CORRECTION;

ANGEL QUIROS, Acting Commissioner,
   Connecticut Department of Correction,
   in his official capacity; and

ROGER BOWLES, Warden,
   Northern Correctional Institution,
   in his official capacity,

             Defendants.

Civil Action No. 3:21-cv-00146-KAD

April 2, 2021

### PLAINTIFF DISABILITY RIGHTS CONNECTICUT'S
### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

TABLE OF ABBREVIATIONS .............................................................. viii

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT BACKGROUND .................................................................. 3

LEGAL STANDARDS .............................................................................. 6

ARGUMENT ............................................................................................. 6

I.     DRCT'S CLAIMS ARE RIPE AND THE COURT MUST RESOLVE THEM ............. 7

     A.     DRCT Did Not Fail to Exhaust Any Administrative Remedies ........................... 8

          1.     No Administrative Remedies Are Available to Remedy DRCT's Claims Directed at Ending Defendants' Systematic Psychological and Physical Abuse of Prisoners with Mental Illness ............................... 8

          2.     DRCT Instituted this Lawsuit to Prevent and Eliminate the Imminent Serious Harm Being Inflicted on Prisoners With Mental Illness and Is Therefore Exempted from Administrative Remedy Requirements ............................................... 12

          3.     DRCT Instituted this Lawsuit Only After Determining that its Claims Would Not be Resolved Within a Reasonable Time .................. 13

     B.     The Prudential Ripeness Factors Require that the Court Exercise Jurisdiction Over DRCT's Claims ........................................................ 16

          1.     DRCT's Constituents Have Already Suffered, and Are Continuing to Suffer, Cruel and Unusual Punishment in Violation of the Eighth Amendment ............................................................... 17

          2.     DRCT's Constituents Will Continue to Suffer Cruel and Unusual Punishment Each Day that Resolution of DRCT's Claims Is Delayed ............................................................... 19

II.     DRCT HAS STANDING TO ENFORCE THE CONSTITUTIONAL RIGHTS OF DRCT'S CONSTITUENTS ................................................................... 20

     A.     P&A Systems Are the Archetypical Associational Standing Plaintiffs and DRCT Has Alleged and Established Associational Standing ............................ 21

     B.     DRCT Has Organizational Standing Because Defendants' Continuing Systematic Abuse of Prisoners with Mental Illness Has Forced DRCT to Divert Limited Resources to that Issue and to File this Action ........................ 26

     C.     Prudential Third-Party Standing Concerns Do Not Trump DRCT's Article III Standing ............................................................... 27

          1.     DRCT Is a Statutorily-Created P&A System Vested with Statutory Authority to Prosecute Claims on Behalf of Its Constituents ................. 28

# TABLE OF CONTENTS
### (continued)

2.     DRCT Satisfies the Traditional Third-Party Standing Exception............ 30

CONCLUSION.................................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                                                           **Page(s)**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
  671 F.3d 140 (2d Cir. 2011) (per curiam) ..................................................6

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003) ......................................................................6

*Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental
  Retardation Ctr.*,
  19 F.3d 241 (5th Cir. 1994) .....................................................................23

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
  426 F.3d 635 (2d Cir. 2005) ......................................................................6

*Bennett v. Spear*,
  520 U.S. 154 (1997) .................................................................................29

*Camacho v. Brandon*,
  317 F.3d 153 (2d Cir. 2003) .....................................................................30

*Centro de la Comunidad Hispana de Locus Valley v. Town of Oyster Bay*,
  868 F.3d 104 (2d Cir. 2017) .....................................................................26

*Cmty. Legal Aid Soc'y, Inc. v. Coupe*,
  No. 15-cv-688-GMS, 2016 WL 1055741 (D. Del. Mar. 16, 2016) ........................21

*Colo. River Water Conservation Dist. v. U.S.*,
  424 U.S. 800 (1976) ...................................................................................6

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
  675 F.3d 149 (2d Cir. 2012) .....................................................................22

*Disability Advocates, Inc. v. Paterson*,
  598 F. Supp. 2d 289 (E.D.N.Y. 2019) .......................................................22

*Disability Rts. N.Y. v. N.Y. State*,
  No. 17-cv-6965-RRM-SJB, 2019 WL 2497907 (E.D.N.Y. June 14, 2019) ...........22

*DMJ Assocs., L.L.C. v. Capasso*,
  288 F. Supp. 2d 262 (E.D.N.Y. 2003) .......................................................29

*Doe v. Stincer*,
  175 F.3d 879 (11th Cir. 1999) ..................................................................23

**Cases**                                                                 **Page(s)**

*Dunn v. Dunn*,
    219 F. Supp. 3d 1163 (M.D. Al. 2016) ................................................................11, 13, 14, 32

*EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*,
    No. 3:10-cv-1489 (WWE), 2011 WL 2938077 (D. Conn. July 19, 2011) .............................25

*In re Elec. Books Antitrust Litig.*,
    14 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................29

*Friends of the Earth v. Consol. Rail Corp.*,
    768 F.2d 57 (2d Cir. 1985) ........................................................................................14

*Goldstein v. Coughlin*,
    83 F.R.D. 613 (W.D.N.Y. 1979) ..............................................................................29

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ...............................................................................................26

*High Mountain Corp. v. MVP Health Care, Inc.*,
    416 F. Supp. 3d 347 (D. Vt. 2019) ...........................................................................17

*Hunt v. Washington State Apple Advertising Comm'n*,
    432 U.S. 333 (1977) ......................................................................................21, 23, 25

*Ind. Prot. and Advocacy Servs. v. Ind. Family and Social Servs. Admin.*,
    603 F.3d 365 (7th Cir. 2010) .....................................................................................13

*Joseph S. v. Hogan*,
    561 F. Supp. 2d 280 (E.D.N.Y. 2008) .................................................................21, 22

*Keepers, Inc. v. City of Milford*,
    807 F.3d 24 (2d Cir. 2015) .......................................................................................31

*Kirkendall v. Halliburton, Inc.*,
    707 F.3d 173 (2d Cir. 2013) ......................................................................................9

*Kowalski v. Tesmer*,
    543 U.S. 125 (2004) ...........................................................................................28, 30

*Laflamme v. New Horizons, Inc.*,
    605 F. Supp. 2d 378 (D. Conn. 2009) ...............................................................21, 22, 23, 25

*Lexmark Int'l, Inc., v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .................................................................................................6

**TABLE OF AUTHORITIES**
**(Continued)**

Cases                                                                                   Page(s)

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..................................................................................... 25, 26

*Mental Disability Law Clinic v. Hogan*,
    853 F. Supp. 2d 307 (E.D.N.Y. 2012) ........................................................... 26, 27

*Mental Hygiene Legal Serv. v. Cuomo*,
    13 F. Supp. 3d 289 (S.D.N.Y. 2014) ..................................................................... 32

*Mich. Prot. & Advocacy Serv., Inc. v. Flint Cmty. Schs.*,
    146 F. Supp. 3d 897 (E.D. Mich. 2015) ........................................................ 9, 11, 16

*Millo v. Hanover Ins. Co.*,
    No. 3:17-cv-1533 (VLB), 2018 WL 2197774 (D. Conn. May 14, 2018) .............. 20

*Missouri Prot. & Advocacy Servs., Inc. v. Carnahan*,
    499 F.3d 803 (8th Cir. 2007) ................................................................................. 23

*N.Y. State Citizens' Coal. for Children v. Poole*,
    922 F.3d 69 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 956 (2020) ........... 26, 27, 28, 30

*Nashville Cmty. Bail Fund v. Gentry*,
    No. 3:20-cv-00103, --- F. Supp. 3d ---, 2020 WL 6273913 (M.D. Tenn. Oct.
    26, 2020) ................................................................................................................. 31

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir 2011) ................................................................................... 27

*Office of Prot. and Advocacy for Persons with Disabilities v. Armstrong*,
    266 F. Supp. 2d 303 (D. Conn. 2003) ................................................................ 8, 11

*Or. Advocacy Ctr. v. Mink*,
    322 F.3d 1101 (9th Cir. 2003) ..................................................................... 21, 23, 24

*Parent/Professional Advocacy League v. City of Springfield*,
    934 F.3d 13 (1st Cir. 2019) .................................................................................... 23

*Patsy v. Bd. of Regents of State of Fla.*,
    457 U.S. 496 (1983) .................................................................................................. 8

*Phila. Indem. Ins. Co. v. Enter. Builders, Inc.*,
    No. 3:20-cv-00056 (KAD), 2021 WL 681148 (D. Conn. Feb. 22, 2021)
    (Dooley, J.) ............................................................................................................... 7

**Cases**                                                                                          **Page(s)**

*Powers v. Ohio*,
    499 U.S. 400 (1991)........................................................................................31

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014)............................................................................27

*Reynolds v. Arnone*,
    402 F. Supp. 3d 3 (D. Conn. 2019)..........................................................19, 31

*Rubenstein v. Benedictine Hosp.*,
    790 F. Supp. 396 (N.D.N.Y. 1992)..............................................................29

*Simmonds v. I.N.S.*,
    326 F.3d 351 (2d Cir. 2003)..................................................................6, 17, 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)....................................................................................6

*State of Conn. Office of Prot. and Advocacy for Persons with Disabilities v. Choinski*,
    No. 3:03-cv-01352 (D. Conn.)..............................................................3, 14, 18

*State of Conn. Office of Prot. and Advocacy for Persons with Disabilities v. Conn.*,
    706 F. Supp. 2d 266 (D. Conn. 2010)....................................................22, 23, 24

*State of N.Y. v. Sullivan*,
    906 F.2d 910 (2d Cir. 1990)..........................................................................11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)........................................................................................7

*Swan v. Stoneman*,
    635 F.2d 97 (2d Cir. 1980)..........................................................................9, 11

*Tellis v. LeBlanc*,
    No. 18-cv-0541, 2019 WL 1474777 (W.D. La. Apr. 3, 2019)..................21

*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996)......................................................................................21

*United States v. McCarthy*,
    453 F. Supp. 3d 520 (D. Conn. 2020)..........................................................9, 11

**Statutes**                                                                      **Page(s)**

42 U.S.C. § 1983 ...........................................................................................8, 28, 32

42 U.S.C. § 10801 ...........................................................................................14, 25

42 U.S.C. § 10805 ...................................................................................................10

42 U.S.C. § 10807 ........................................................................................... *passim*

Americans with Disabilities Act, 42 U.S.C. § 12132 et seq. ..............1, 9, 12, 17, 18, 28

Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ..........................................1, 12, 15, 28

Federal Rule of Civil Procedure 12. ........................................................................6

Federal Rule of Civil Procedure 26 .........................................................................5

**Other Authorities**

42 C.F.R. § 51.32(a)-(c)....................................................................................9, 10

S. Rep. 103-120, 39, 1994 U...................................................................................29

S. Rep. No. 109, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 1361 ............15

## TABLE OF ABBREVIATIONS

| Citation Format | Source |
|---|---|
| "FAC ¶ __" | DRCT's First Amended Complaint, dated February 18, 2021 (ECF No. 24) |
| "Def. Mem. at __"<br>"Def Mem. Ex. __" | Memorandum of Law in Support of Defendants' Motion to Dismiss, and exhibits thereto (ECF Nos. 31-1 – 31-7) |
| "Alisberg ¶ __" | Declaration of Nancy B. Alisberg, dated March 31, 2021 |
| "Considine ¶ __"<br>"Considine Ex. __" | Declaration of Kasey Considine, dated April 1, 2021, and exhibits thereto |
| "Dorfman ¶ __" | Declaration of Deborah A. Dorfman, dated March 31, 2021 |
| "Lin ¶ __"<br>"Lin Ex. __" | Declaration of Eric W. Lin, dated March 26, 2021, and exhibits thereto |
| "Metcalf ¶ __"<br>"Metcalf Ex. __" | Declaration of Hope Metcalf, dated March 29, 2021, and exhibits thereto |

## PRELIMINARY STATEMENT

Defendants concede that DRCT has pleaded viable claims and that the Court has jurisdiction over those claims. Defendants do not dispute any of the specific facts that DRCT alleges — facts demonstrating that the Connecticut Department of Corrections ("DOC") systematically abuses prisoners with mental illness in, or at risk of transfer to, isolative status ("DRCT's Constituents"). Defendants also do not dispute that those facts give rise to a reasonable inference that Defendants are violating the Eight Amendment to the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act. Defendants also do not dispute that DRCT's claims are constitutionally ripe and that DRCT has Article III standing. Accordingly, this Court has a virtually unflagging obligation to exercise its authority over DRTC's claims.

Defendants' argument that the Court should nevertheless dismiss DRCT's claims based on prudential ripeness is based on mischaracterizations of law and fact. Defendants contend that DRCT's claims are not prudentially ripe because DRCT failed to exhaust "administrative remedies" as required by the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801, *et seq.* ("PAIMI"). But Defendants' position is contradicted by the plain language of PAIMI, the implementing regulations, and Defendants' own cases.

First, Defendants do not identify any "administrative remedy" by which DRCT could obtain the relief sought in this action and there is none. DRCT seeks an injunction against Defendants' ongoing, systemic, and institutionalized mistreatment of DRCT's Constituents throughout the DOC system.

Second, PAIMI's administrative remedy provision expressly carves out claims like those asserted by DRCT seeking "to prevent [and] eliminate imminent serious harm" to persons with mental illness. DRCT seeks to stop Defendants from isolating prisoners with mental illness in

concrete cells for 22 or more hours per day — for months, years, or even indefinitely. DRCT seeks to stop Defendants' barbaric in-cell shackling of prisoners with mental illness. Defendants' abuse of these persons is causing long-term psychological and physical damage. If PAIMI's "serious harm" exception ever applies, then it applies here.

Third, DRCT filed suit after determining that its claims would not be resolved within a reasonable time. PAIMI vests DRCT with the sole discretion to make that determination — and does not vest Defendants with the right to second-guess it. But even applying an objective standard, DRCT's decision to file suit was eminently reasonable.

Defendants are really asking this Court to re-write the clear statutory directives in PAIMI to mandate that Protection and Advocacy Systems ("P&A Systems") engage in open-ended pre-suit mediations devised by defendants, and to vest defendants with the unilateral authority to decide if and when it is time to litigate. But PAIMI provides for the exact opposite. PAIMI mandates that P&A Systems scrupulously enforce the rights of persons with mental illness and file suit when they deem it necessary to ensure that claims are timely resolved. That is exactly what DRCT did here.

Finally, Defendants' argument that this Court should dismiss DRCT's claims based on prudential standing concerns is baseless. This Court has twice found that DRCT's predecessor (OPA) has standing. Defendants do not provide any reason for this Court to reverse course and find — for the first time — that Connecticut's P&A System cannot enforce the constitutional rights of its constituents despite Congress having vested it with the statutory authority to do so.

In sum, there is no dispute that the Court has jurisdiction, that DRCT has pleaded viable claims, and that this Court has an unflagging obligation to exercise its authority over those claims. Defendants' motion should be denied in its entirety.

## RELEVANT BACKGROUND

DRCT is the authorized P&A System for the State of Connecticut.  (FAC ¶ 10; Dorfman

¶¶ 2, 5.)  DRCT is the successor entity to the State of Connecticut Office of Protection and

Advocacy for Persons with Disabilities ("OPA").  (FAC ¶ 10; Dorfman ¶ 6.)  DRCT is

responsible for providing protection and advocacy services to individuals with mental illness and

disabilities.  (FAC ¶ 12; Dorfman ¶ 7.)  As such, DRCT has the statutory authority to pursue

legal remedies to ensure protection of individuals with mental illness in Connecticut, including

prisoners with mental illness in DOC custody.  (FAC ¶ 13; Dorfman ¶ 8.)

DRCT, and its predecessor OPA, have focused on DOC's mistreatment of prisoners with

mental illness for years.  (FAC ¶¶ 24, 41-44; Dorfman ¶ 18; Alisberg ¶ 6.)  On August 6, 2003,

OPA filed a lawsuit against DOC in this Court alleging DOC's treatment of prisoners with

serious mental illness at Northern Correctional Institution ("Northern") and Garner Correctional

Institution violated the Eighth and Fourteenth Amendments.  (FAC ¶ 41; Alisberg ¶ 8.)  *State of*

*Conn. Office of Prot. and Advocacy for Persons with Disabilities v. Choinski*, No. 3:03-cv-01352

(D. Conn.) ("*Choinski* Litigation").  On September 26, 2005, this Court approved a settlement

agreement and retained jurisdiction to enforce compliance with that agreement.  (FAC ¶ 42;

Alisberg ¶ 8.)  The Settlement Agreement provided substantial protections for prisoners with

mental illness.  (FAC ¶ 43; Alisberg ¶ 8.)  But in 2008, the judicial monitoring and compliance

period ended and the final independent audit found substantial non-compliance.  (FAC ¶ 44;

Alisberg ¶ 8.)  DOC quickly reverted to its pre-*Choinski* mistreatment of prisoners with mental

illness.  (FAC ¶ 45; Alisberg ¶ 8.)

DRCT has continued to devote substantial time to reviewing and trying to resolve

complaints by prisoners with mental illness about their prolonged isolation, in-cell shackling, and

the devastating psychological and physical harms caused by those practices.  (FAC ¶ 24;

Dorfman ¶¶ 18-19, 26-28; Alisberg ¶ 9; Considine ¶ 8.)  DRCT's PAIMI Advisory Council established a priority concerning DOC's in-cell shackling of prisoners with mental illness.  (FAC ¶ 22; Alisberg ¶¶ 10-11.)  DRCT's Advisory Council has also supported and approved DRCT's efforts to address the prolonged isolation and in-cell shackling of prisoners with mental illness. (FAC ¶ 22; Alisberg ¶ 11.)  DRCT employees and counsel have worked tirelessly to try to get DOC to stop its mistreatment of prisoners with mental illness, including the prolonged isolation and in-cell shackling of those prisoners.  (Dorfman ¶¶ 18-19, 26-28; Alisberg ¶ 9.)

DRCT has not been alone in its efforts.  On May 14, 2019, the Lowenstein International Human Rights Clinic raised DOC's mistreatment of prisoners, including prisoners with mental illness, with the Special Rapporteur on Torture in the Office of the High Commissioner for Human Rights at the United Nations.  (Metcalf ¶ 4, Ex. 1.)  The Clinic provided to the Special Rapporteur and to DOC a detailed 26-page letter supported by voluminous appendices.  (*Id.* ¶¶ 4, 5, Exs. 1, 2.)  The Clinic reported to DOC:

> [W]e have concluded that the Department's practices – particularly the use of prolonged isolation and in-cell restraints – constitute cruel, inhuman and degrading treatment, and in many instances, torture.  We do not make these allegations lightly, but only after careful investigation, observation and reflection.

(*Id.* Ex. 2.)  One year later, the UN Special Rapporteur presented the results of his investigation which were publicly reported by the United Nations:

> The "excessive use" of solitary confinement by the prison service in the US state of Connecticut, prompted an independent UN human rights expert to voice alarm[.] . . .
>
> The [DOC] has appeared to routinely repress inmates through prolonged isolation or indefinite isolation, excessive use of in-cell restraints, and "needlessly intrusive strip searches." . . .  According to the independent expert, there seems to be a state-sanctioned policy aimed at purposefully inflicting severe pain or suffering, physical or mental, "which may well amount to torture."

(*Id.* ¶ 6, Ex. 3.)

On November 23, 2020, DRCT sent a letter to DOC, demanding that DOC end its mistreatment of prisoners with mental illness. (FAC ¶ 159; Considine ¶ 3, Ex. 1.) DRCT demanded that DOC "implement measures to protect individuals with mental illness against in-cell restraint and prolonged isolation." (Considine Ex. 1.) DRCT stated that DOC's practices violated the Constitution and federal law:

> These practices are in violation of the Eighth and Fourteenth Amendments [to] the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* . . ., and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* . . .

(Considine Ex. 1.) DRCT demanded that DOC confirm that it would end these practices and provide a detailed implementation plan by December 18, 2020. (*Id.*) DRCT told DOC that it intended to take legal action absent such confirmation:

> If the Department does not confirm that it will promptly end these practices, then we will be left with no choice but to pursue legal action to protect these individuals against this continuing cruel, unusual, and inhuman treatment.

(*Id.*) DOC received DRCT's letter on November 24, 2020. (Considine ¶ 4, Ex. 2; Lin ¶ 5, Ex. 3.)

Three weeks later, and 73 days after DOC received the letter, DOC still had not provided any substantive response. (Considine ¶ 7; Lin ¶ 8.) DRCT concluded that it could not timely resolve its claims by continuing to wait for DOC to respond while DRCT's Constituents continued to suffer inhuman treatment at the hands of Defendants. (Dorfman ¶¶ 20-22.) DRCT was left with no choice but to file this action. (*Id.*) Defendants still have not proposed any resolution to DRCT's claims two months after it filed suit. Instead, Defendants filed a meritless motion to dismiss, refused to participate in the Rule 26(f) process, and then filed a frivolous stay motion.

## LEGAL STANDARDS

DRCT must allege and establish that its claims are constitutionally ripe and that it has Article III standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). In resolving Defendants' Rule 12(b)(1) motion, the Court must accept as true all uncontroverted facts alleged by DRCT and must draw all reasonable inferences in its favor. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam). But the Court can consider evidence outside the pleadings and resolve factual disputes by reference to that evidence. *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003).

## ARGUMENT

Defendants do not dispute that this Court has jurisdiction over DRCT's claims. They do not challenge constitutional ripeness or Article III standing. Accordingly, the Court has jurisdiction and a "virtually unflagging obligation . . . to exercise [that] jurisdiction." *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *see also Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

Defendants argue that the Court should nevertheless dismiss DRCT's claims based on prudential ripeness and the third-party prudential standing doctrine — neither of which is a limit on this Court's jurisdiction. *See Simmonds v. I.N.S.*, 326 F.3d 351, 354 n.2 (2d Cir. 2003) (distinguishing jurisdictional and prudential ripeness); *Lexmark Int'l*, 572 U.S. at 127-128 n.3 (distinguishing Article III standing from prudential concerns including third party standing).

As demonstrated below, the Court should not dismiss DRCT's claims. DRCT's well-pleaded allegations must be accepted as true and, by themselves, require that the Court deny

6

Defendants' motion.[1]  But even if the Court were to look past DRCT's allegations (it need not),

DRCT has submitted evidence establishing that its claims are constitutionally ripe, that it has

Article III standing, and that the Court should exercise its authority over DRCT's claims.

## I.  DRCT'S CLAIMS ARE RIPE AND THE COURT MUST RESOLVE THEM

DRCT's claims are constitutionally ripe and should not be dismissed based on prudential

ripeness.  Defendants concede that DRCT's claims are constitutionally ripe.  (Def. Mem. at 23.)

But Defendants argue that DRCT failed to exhaust its "administrative remedies" (*Id.* at 12-23),

and that the Court, therefore, should exercise its discretion to dismiss DRCT's claims based on

prudential ripeness (*id.* at 23-30).

The Supreme Court has questioned the viability of the prudential ripeness doctrine and

cautioned that it is at odds with a court's "virtually unflagging" obligation to exercise its

jurisdiction.  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Lexmark*

*Int'l*, 572 U.S. at 125-126).  Earlier this year, this Court recognized that the Supreme Court had

"cast doubt on the 'continuing vitality of the prudential ripeness doctrine . . . .'"  *Phila. Indem.*

*Ins. Co. v. Enter. Builders, Inc.*, No. 3:20-cv-00056 (KAD), 2021 WL 681148, at *2 n.1 (D.

Conn. Feb. 22, 2021) (Dooley, J.) (quoting *N.Y. v. Trump*, No. 20-cv-5770, 2020 WL 5422959,

at *24 n.12 (S.D.N.Y. Sept. 10, 2020)).  Thus, while the death knell has not yet rung, this Court

should be mindful of invoking prudential ripeness to dismiss claims over which it has

jurisdiction.

---

[1] Defendants' futile attempt to sweep DRCT's 223-paragraphs (59 pages) of detailed factual allegations aside as "conclusory" (Def. Mem. at 5) reveals a basic misunderstanding of the difference between factual allegations and evidence.  DRCT describes the challenged practices in excruciating factual detail (*e.g.*, FAC ¶¶ 55-103) and bolsters those allegations with 51 paragraphs of detailed factual allegations describing the specific experiences of three inmates with mental illness (*id.* ¶¶ 104-155).

Here, DRCT did not fail to exhaust any administrative remedies, and the prudential ripeness factors weigh strongly in favor of exercising jurisdiction over DRCT's claims.

### A. DRCT Did Not Fail to Exhaust Any Administrative Remedies

DRCT did not fail to exhaust any administrative remedies and, in fact, filed this lawsuit in full compliance with PAIMI.

Plaintiffs generally do not have to exhaust administrative remedies before filing Section 1983 actions. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496 (1983); *Office of Prot. and Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 312-313 (D. Conn. 2003). But PAIMI provides a narrow exception to the no-exhaustion rule by requiring, in certain circumstances, that P&A Systems exhaust "administrative remedies":

(a)     Prior to instituting any legal action in a Federal or State court on behalf of a individual with mental illness, an eligible system, or a State agency or nonprofit organization which entered into a contract with an eligible system under section 10804(a) of this title, shall exhaust in a timely manner all administrative remedies where appropriate. If, in pursuing administrative remedies, the system, agency, or organization determines that any matter with respect to such individual will not be resolved within a reasonable time, the system, agency, or organization may pursue alternative remedies, including the initiation of a legal action.

(b)     Subsection (a) does not apply to any legal action instituted to prevent or eliminate imminent serious harm to a individual with mental illness.

42 U.S.C. § 10807(a), (b). DRCT fully complied with these provisions.

### 1. No Administrative Remedies Are Available to Remedy DRCT's Claims Directed at Ending Defendants' Systematic Psychological and Physical Abuse of Prisoners with Mental Illness

DRCT was not required to exhaust any "administrative remedies" under PAIMI because there are no administrative remedies available to remedy DRCT's claims.

PAIMI requires that "[p]rior to instituting any legal action . . . on behalf of a[n] individual with mental illness . . . [a P&A] shall exhaust in a timely manner all *administrative*

*remedies, where appropriate.*" 42 U.S.C. § 10807(a) (emphasis added). PAIMI does not impose any additional burden regarding the exhaustion of administrative remedies; rather "[a] P&A system shall be held to the standard of exhaustion of remedies provided under State and Federal law." 42 C.F.R. § 51.32(e).

PAIMI, therefore, requires that there actually be an administrative remedy available. *Cf. Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) ("Implicit in the exhaustion requirement is the condition that a plaintiff have an administrative remedy to exhaust"). Moreover, an adequate administrative remedy must (1) be speedy, efficient, and readily available; (2) provide for testimony under oath or subpoena of witnesses or papers; (3) include adequate procedures for the resolution of issues of fact; and (4) allow for a remedy that is coextensive with plaintiff's legal claims. *See Swan v. Stoneman*, 635 F.2d 97, 103-104 (2d Cir. 1980); *see also United States v. McCarthy*, 453 F. Supp. 3d 520, 525 (D. Conn. 2020). The alleged administrative remedy must also not be futile because, for example, undue delay will lead to catastrophic health consequences. *McCarthy*, 453 F. Supp. 3d at 525.

Here, there is no administrative remedy through which DRCT could have resolved its claims. DRCT is not bringing claims on behalf of an individual that might be subject to an administrative procedure. Rather, DRCT seeks a judgment declaring that Defendants' prolonged isolation and in-cell shackling of DRCT's Constituents in DOC custody violates the Eighth Amendment and a permanent injunction enjoining Defendants' from their continued use of those practices. (*See, e.g.*, FAC ¶ 14, p. 59-60 (request for relief).) *See Mich. Prot. & Advocacy Serv., Inc. v. Flint Cmty. Schs.*, 146 F. Supp. 3d 897, 905-06 (E.D. Mich. 2015) ("plain language" of § 10807(a) establishes that "limited exhaustion requirement only applies where the advocacy organization pursues a claim on behalf of a particular individual" and did not bar plaintiff's

claims directed to systematic denial of constituents' right to access educational records); *cf.*

*Gonzalez*, 756 F. Supp. at 1537-38 (holding that alleged available administrative remedies were

"clearly inadequate" under "traditional exhaustion doctrine" requiring due process safeguards).

Defendants themselves do not identify any administrative remedy through which DRCT

could have resolved its claims. Defendants wrongly conflate "administrative remedy" with

mediation. (Def. Mem. at 16-17.) But PAIMI distinguishes between "administrative remedies"

and other appropriate remedies such as mediation. *See* 42 U.S.C. § 10805(a)(1) (referencing

"administrative remedies" and "other appropriate remedies"); 42 U.S.C. § 10807(a) (referencing

"administrative remedies" and "alternative remedies"). The implementing regulations also

distinguish between *required* exhaustion of "administrative remedies" and *encouraged* resolution

through a "nonadversarial process involving negotiation, *mediation*, and conciliation." 42 C.F.R.

§ 51.32(a)-(c) (emphasis added). The regulations explain that "administrative procedures" *may

not exist* despite the always-available possibility of negotiation, mediation, and conciliation. *See*

42 C.F.R. § 51.32(d) ("Paragraph (c) of this section does not . . . apply in circumstances where

administrative procedures do not exist.").

Even if mediation were an "administrative remedy" (it is not), Defendants' proposed

notice-response-negotiation-mediation-further investigation-other steps scheme (Def. Mem. at

16-17) is woefully inadequate under both Second Circuit law and PAIMI.

First, Defendants' open-ended scheme lacks the fundamental protections of an adequate

administrative process. Defendants presumably understand that and bury in a footnote what is

purportedly supposed to happen in Stages 3 through 6 of their process:

> The exact nature of this good-faith attempt to mediate the issues will depend on
> what occurs in the previous two steps, including whether the defendants' review
> and investigation reveals the same issues, or contradicts the issues, identified by
> DRCT, and whether the defendants are able to offer any meaningful resolution to

> DRCT, which may dictate whether further efforts, including in-person meetings/mediation, further investigation, or other steps can be taken to address, limit, or resolve the identified issues.

(Def. Mem. at 16 n. 11.)  Defendants' scheme lacks *all* of the requirements of an adequate administrative remedy.  *See Swan*, 635 F.2d at 103-104.

Second, Defendants' scheme is also futile because it builds in delays that risk additional grievous psychological and physical harms, and even death.  *See McCarthy*, 453 F. Supp. 3d at 525; *see also State of N.Y. v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (administrative remedy futile where delay risked "deteriorating health, and possibly even . . . death").

Third, Defendants' scheme vests them with the unilateral ability to decide if and when DRCT's claims would be litigated.  That outcome is contrary to the plain language of PAIMI vesting P&A Systems (not defendants) with the sole and exclusive authority to file suit if and when the P&A System determines that its claims will not be timely resolved.  42 U.S.C. § 10807(a); *see also Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1173 (M.D. Al. 2016).

Defendants fail to cite even a single case in which a court held that a P&A System failed to exhaust administrative remedies because it had not engaged in pre-suit mediation.  In fact, this Court rejected DOC Commissioner's predecessor's argument that DRCT's predecessor (OPA) failed to exhaust its "administrative remedies" despite that it filed suit after an exchange of correspondence and without any apparent attempt at mediation.  *See Office of Prot. and Advocacy of Persons with Disabilities*, 266 F. Supp. 2d at 312-313 ("[Commissioner] has not pointed to any specific administrative remedies that have not been exhausted by [OPA].").  The decisions of other federal courts are in accord.  *See, e.g.*, *Mich. Prot. Advocacy Serv., Inc.*, 146 F. Supp. 3d at 905 (rejecting argument that P&A failed to exhaust administrative remedies where P&A filed suit after requests were ignored and without any apparent mediation).

Finally, Defendants' claim that DRCT "implicitly acknowledged" that Defendants' mediation scheme "is required under PAIMI" (Def. Mem. at 17) makes no sense. DRCT, as is common in civil litigation, sought first to resolve its claims out of court and without wasting extremely limited resources on litigating clear violations of the Eighth Amendment, ADA, and Rehab Act. DRCT did not propose, suggest, or invoke any administrative procedure to resolve its claims and there are none.

> **2.  DRCT Instituted this Lawsuit to Prevent and Eliminate the Imminent Serious Harm Being Inflicted on Prisoners With Mental Illness and Is Therefore Exempted from Administrative Remedy Requirements**

Even if Defendants' mediation scheme were an administrative remedy (it is not), DRCT's claims fall squarely within PAIMI's "serious harm" exception. 42 U.S.C. § 10807(b). Section 10807(b) provides that "[s]ubsection (a) does not apply to any legal action instituted to prevent or eliminate imminent serious harm to a[n] individual with mental illness." *Id.* The continuing, imminent, and serious psychological and physical damage inflicted by Defendants' prolonged isolation and in-cell shackling of DRCT's Constituents easily falls within the scope of this exception.

DRCT alleges that DRCT's Constituents continue to be subjected to prolonged isolation where they "spend at least 22 hours per day on weekdays, and 24 hours per day on weekends, in concrete cells where they live in a world of near total social and sensory deprivation." (FAC ¶ 3; *see also id.* ¶¶ 55-76.) DRCT further alleges that DRCT's Constituents continue to be subjected to in-cell shackling, *i.e.*, that "DOC staff shackle a prisoner's wrists and legs with metal cuffs," "bind the cuffs with a heavy, metal tether chain," and then "leave them shackled for hours or even days in filthy and freezing 'strip cells.'" (*Id.* ¶¶ 4, 77; *see also id.* ¶¶ 77-94.)

DRCT further alleges that this abuse "often causes prisoners with mental illness to harm themselves or attempt suicide." (*Id.* ¶ 69.) DRCT alleges that this mistreatment "exacerbates

mental illness" (*id.* ¶ 68), "causes long-term psychological harm" (*id.* ¶ 72), and "is also known to cause negative long-term physiological effects" (*id.* ¶ 74). DRCT alleges that in-cell-shackling "is dangerous, painful, and injurious," has "caused bleeding on or around prisoners' wrists and ankles and has left prisoners with lasting scars, bruises, and numbness," and resulted in "significant, lasting pain." (*Id.* ¶ 90.)

Defendants do not dispute any of these allegations. Accordingly, Defendants also do not, and cannot, dispute that PAIMI's "serious harm" exception applies. That, by itself, requires that the Court reject Defendants' argument that DRCT failed to comply with PAIMI's administrative remedy requirements. *See Dunn*, 219 F. Supp. 3d at 1175-76 (record strongly suggested that P&A claims directed to inadequate mental health care were exempt from PAIMI administrative remedy requirements pursuant to § 10807(b)); *cf. Ind. Prot. and Advocacy Servs. v. Ind. Family and Social Servs. Admin.*, 603 F.3d 365, 374 n.7 (7th Cir. 2010) ("Congress clearly intended the protection and advocacy systems — all of them — to be able to respond quickly to threats of imminent harm to their constituents.").

### 3. DRCT Instituted this Lawsuit Only After Determining that its Claims Would Not be Resolved Within a Reasonable Time

Even if Defendants' mediation scheme were an "administrative remedy" (it is not) and the harms alleged by DRCT were not serious (they are), Defendants' exhaustion argument fails for a separate and independent reason: DRCT filed suit after determining that its claims would not be resolved within a reasonable time. *See* 42 U.S.C. § 10807(a).

PAIMI provides that "[i]f, in pursuing administrative remedies, the [P&A S]ystem . . . determines that any matter with respect to such individual will not be resolved within a reasonable time, the system . . . may pursue alternative remedies, including the initiation of a legal action." 42 U.S.C. § 10807(a). This statute clearly and unambiguously vests *the P&A*

*System* with the sole and exclusive discretion to determine whether its claims will be timely resolved and to file suit if it determines that they will not. *See Dunn*, 219 F. Supp. 3d at 1175 n.14 ("The plain text of the provision merely requires that the P&A make such a 'determination,' not that it be an objectively reasonable one"). The statute must be applied as written. *See Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 63 (2d Cir. 1985). Here, DRCT filed suit only after DRCT determined that its claims would not be resolved within a reasonable time. (Dorfman ¶¶ 20-22.) That ends the analysis and requires that the Court reject Defendants' exhaustion argument. *See* 42 U.S.C. § 10801(a); *Dunn*, 219 F. Supp. 3d at 1175 n.14.

Even if DRCT had to establish that its determination was objectively reasonable (it does not), DRCT's decision to file suit on February 4 was eminently reasonable. DRCT filed suit only after DOC stopped implementing the protections in the *Choinski* settlement agreement and after spending years trying to address DOC's mistreatment of persons with mental illness. (Alisberg ¶¶ 7-10; Dorfman ¶¶ 18-19.) DRCT also filed suit only after the Clinic raised the mistreatment of prisoners with DOC (Metcalf ¶ 4), and after the United Nations called out DOC for prolonged isolation and in-cell shackling that "may well amount to torture" (Metcalf Ex. 3).

DRCT also sent a letter to DOC on November 23, 2020, in an effort to resolve the dispute without resort to litigation. (Considine ¶ 3, Ex. 1.) DRCT's letter provided all of the information required to provide a timely response:

- DRCT told Defendants that it was writing regarding DOC's mistreatment of persons incarcerated in Restricted Status under Administrative Directive 9.4 (*e.g.*, Administrative Segregation) and raised the improper prolonged isolation and in-cell shackling of these persons. (Considine Ex 1. at 3-4.)

- DRCT explained that these practices are "extremely psychologically harmful" and can lead to "irreparable psychological damage," and references exemplary psychological literature describing the impacts of prolonged isolation. DRCT expressly referenced the head banging, cutting, and other self-injurious behaviors. (*Id.* at 3-6.)

14

- DRCT explained that Defendants' abuse of DRCT's Constituents were "in violation of the Eighth and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12132 *et seq.* . . ., and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* . . ." (*Id.* at 1.)

- DRCT demanded that DOC immediately cease the use of prolonged isolation and in-cell restraints on prisoners with mental illness. (*Id.* at 6-7.)

- DRCT told Defendants that it would take the necessary legal action to protect DRCT's Constituents unless DOC agreed, by December 18, to end these barbaric practices. (*Id.* at 1, 7.)

DOC received DRCT's letter on November 24, 2020. (Lin ¶ 5, Ex. 3.)

Defendants now claim that they did not open DRCT's letter until January 12 because a DOC employee was out with a COVID-19 infection for two months (Def. Mem. at 7)[2] and that the letter did not provide "sufficient information and detail" in order to respond (*Id.* at 17-18). But that is not what Defendants said at the time. In their January 22, 2021 letter, Defendants stated that DRCT's letter was not opened until January 12 "for reasons unknown," acknowledged that the letter included "detailed allegations and claims," and promised a substantive response "in the near future." (Considine Ex. 3.)

DRCT, having received no substantive response, filed suit on February 4, 2021 — *73 days* after DOC received DRCT's letter and more than three weeks after DOC promised a response in the near future. (Dorfman ¶ 20.) By comparison, the legislative history that Defendants rely on includes a recommendation (but not a requirement) that a P&A provide just *3 days* of notice before filing suit. *See* S. Rep. No. 109, 99th Cong., 2d Sess., reprinted in 1986 U.S.C.C.A.N. 1361 at 1371. Defendants' failure to provide any substantive response was made more egregious by the fact that they had long been on notice of continuing extremely harmful

---

[2] If true, the fact that DOC did not have any process in place to ensure that mail could continue to be opened if a single employee fell ill is irrelevant to the reasonableness of DRCT's actions. It merely underscores the unreasonableness of DOC's actions and the reason that PAIMI does not place P&A Systems at the mercy of those violating the constitutional rights of persons with mental illness.

practices and the serious risk of irreparable psychological and physical damage to DRCT's

Constituents. (Alisberg ¶ 8; Metcalf ¶¶ 4-5, Ex. 2.)

Finally, Defendants' own professed shining example of their responsiveness to the needs

of prisoners with mental illness (Def. Mem. at 22 n.15, Ex. F) merely underscores their

lackadaisical approach to the risks of serious injury and death that these prisoners face. On

January 29, 2021, Defendants' counsel was told that an inmate at Northern required "immediate"

transferred to an inpatient facility because he was at "high imminent risk for a potentially lethal

suicide" after several instances of "self-injurious" cutting requiring medical attention. (*Id.*)

More than two weeks later, and only after Defendants' counsel learned that DRCT had filed this

lawsuit, did Defendants' counsel finally respond that the inmate would be moved to a different

prison "in the next few weeks." (*Id.*)

In short, DRCT's decision that it had to file suit in order to timely resolve its claims was

objectively reasonable. *See Dunn*, 219 F. Supp. 3d at 1174 (Alabama P&A satisfied PAIMI

administrative remedy requirements where it filed action alleging violations of Eighth

Amendment based on inadequate mental health care for prisoners with mental illness two months

after sending notice letter to defendants); *Mich. Prot. & Advocacy Serv., Inc.*, 146 F. Supp. 3d at

905-06 (rejecting argument that Michigan P&A failed to exhaust administrative remedies where

defendant failed to respond to, or rejected, record requests sent three months earlier).

### B. The Prudential Ripeness Factors Require that the Court Exercise Jurisdiction Over DRCT's Claims

DRCT did not fail to exhaust its administrative remedies and the Court, therefore, need

not even consider exercising its discretion under the prudential ripeness doctrine. But even

considering prudential ripeness, the Court should exercise jurisdiction over DRCT's claims.[3]

---

[3] The mere failure to exhaust administrative remedies, by itself, is relevant to but does not require dismissal

The Court may, in its discretion, find that a case is not prudentially ripe if "the case will be better decided later and . . . the parties will not have constitutional rights undermined by the delay." *Simmonds*, 326 F.3d at 357. In resolving that question, the Court should consider "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if the decision is withheld." *Id.* at 359. Here, both factors weigh strongly in favor of the Court exercising jurisdiction over DRCT's claims.

### 1. DRCT's Constituents Have Already Suffered, and Are Continuing to Suffer, Cruel and Unusual Punishment in Violation of the Eighth Amendment

"[T]he 'fitness' analysis 'is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur.'" *Id.* (quoting *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989)). This factor weighs strongly in favor of the Court exercising its jurisdiction over DRCT's claims.

DRCT's well-pleaded allegations, taken as true, establish that DRCT's Constituents have been, and continue to be, subject to prolonged isolation and in-cell shackling causing self-harm and attempted suicide (*e.g.*, FAC ¶ 69), "long-term psychological harm" (*id.* ¶ 72), and "dangerous" and "painful" physical injuries including "bleeding," scarring, bruises, and "numbness" (*id.* ¶ 90). DRCT further alleges that Defendants will continue to subject DRCT's Constituents to these barbaric punishments absent an injunction putting them to an end. (*E.g.*, *id.* ¶¶ 173, 186.) Defendants do not dispute these allegations.

---

based on prudential ripeness. *See High Mountain Corp. v. MVP Health Care, Inc.*, 416 F. Supp. 3d 347, 353-54, n.3 (D. Vt. 2019) ("failure to exhaust administrative remedies *can* weigh in favor of invoking the prudential ripeness doctrine," but "[b]ecause there is no established administrative claims process, there is no need to wait for the development of an administrative record") (emphasis added) (citation omitted).

Instead, Defendants respond that DRCT's claims are unfit for resolution because "the State and DOC announced the closure of Northern" and the parties could have "resolved" or "narrowed" issues in dispute. (Def. Mem. at 26-29.) Defendants' response is unavailing.

The announced closure of one notorious locus of abuse does not render any of the issues to be litigated "contingent on future events" even if DRCT's claims were limited to DRCT's Constituents at Northern — which they are not. (FAC ¶ 14.) DRCT's claims are directed to Defendants' systematic prolonged isolation and in-cell shackling of DRCT's Constituents wherever they may be in DOC custody. (*Id*.) The constitutionality of those practices does not turn on the street address of the correctional institution.

Defendant's claim that the parties could "resolve" or "narrow" the issues in dispute (Def. Mem. at 26) is simply a rehash of their misplaced argument that DRCT failed to exhaust the alleged "administrative remedy" of mediation. (*See supra* Part I.A.1.) Defendants fail to cite any case in which a court found claims unfit for resolution and dismissed them on prudential ripeness grounds because the parties might have narrowed or resolved issues through mediation.

Finally, as a factual matter, Defendants' claim that they would have worked with DRCT to quickly resolve DRCT's claims strains credulity. Before the *Choinski* settlement agreement even expired, Defendants began reverting to their old ways and have not once given any indication that they intend to end the prolonged isolation and in-cell shackling of DRCT's Constituents. (*See* FAC ¶¶ 44-45; Alisberg ¶ 8; Considine ¶ 7; Lin ¶ 8.) DOC has also been litigating for *more than seven years* claims filed by a special circumstances prisoner alleging that his prolonged isolation constituted cruel and unusual punishment under the Eighth Amendment — and is continuing to litigate even after this Court granted summary judgment finding that his mistreatment did amount to cruel and unusual punishment under the Eighth Amendment. *See*

*Reynolds v. Arnone*, 402 F. Supp. 3d 3, 23 (D. Conn. 2019), *aff'd in part and vacated in part*, 990 F.3d 286 (2d Cir. 2021) (cited in FAC ¶¶ 30, 73). DOC also has still not provided any substantive response to DRCT's November 23 letter despite that it received that letter more than four months ago (129 days) and promised a response "in the near future" more than two months ago (70 days). (Considine Ex. 3; Lin ¶ 8.)

> ### 2. DRCT's Constituents Will Continue to Suffer Cruel and Unusual Punishment Each Day that Resolution of DRCT's Claims Is Delayed

"[H]ardship" exists where "'the challenged action creates a direct and immediate dilemma for the parties.'" *Simmonds*, 326 F.3d at 360 (quoting *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999).) By contrast, "[t]he mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Id.* (citing *Marchi*, 173 F.3d at 478-79.) There is hardship here.

Defendants' contention that "DRCT will not endure any significant hardship" if adjudication of this case is delayed (Def. Mem. at 29) betrays a stunning disregard for DRCT's Constituents on behalf of whom this suit is brought. DRCT alleges, and Defendants do not dispute, that DRCT's Constituents are being subjected to barbaric mistreatment and suffering horrific psychological and physical injury. (*See, e.g.*, FAC ¶¶ 55-162.) Defendants respond that dismissal will impart "no hardship" and will actually "benefit[] DRCT and its constituents" because they could negotiate through "more efficient administrative channels" and "limit[] litigation costs." (Def. Mem. at 29.) Defendants ignore that as counsel for the parties brief this motion from the comfort of their offices and homes, prisoners with mental illness are locked in concrete cells 22+ hours per day, and routinely dumped fully shackled into cold strip cells. (FAC ¶¶ 60, 81, 156-162.) DRCT remains open to mediating the most efficient resolution to its claims, but DRCT cannot delay the enforcement of its Constituents' constitutional rights.

Finally, none of the cases that Defendants cite supports their position. For example, in *Millo v. Hanover Ins. Co.*, No. 3:17-cv-1533 (VLB), 2018 WL 2197774 (D. Conn. May 14, 2018), the Court dismissed claims for common law bad faith and violation of the Connecticut Unfair Trade Practices Act on prudential ripeness grounds where plaintiff failed to first raise a missing form with the State of Connecticut Workers Compensation Commission. *Id.* at *3. In *Gonzalez*, 756 F. Supp. 1533, the court did not even address prudential ripeness. Rather, defendants moved for summary judgment on the ground that the P&A System had not satisfied PAIMI's statutory "administrative remedy" exhaustion requirements before filing claims directed at the lack of therapy and training for persons with mental illness at a state hospital. *Id.* at 1353. The court found that the proposed administrative remedies were "clearly inadequate" and denied the motion, but stayed the case for 90 days to facilitate a potential resolution. *Id.* at 1538-39.[4]

## II. DRCT HAS STANDING TO ENFORCE THE CONSTITUTIONAL RIGHTS OF DRCT'S CONSTITUENTS

DRCT has alleged and established that it has Article III standing. Defendants do not dispute that DRCT has alleged and can establish both associational and direct organizational standing. Defendants instead argue that the Court should dismiss DRCT's claims because they are allegedly precluded by the third-party standing bar. (Def. Mem. at 30-33.) But that prudential bar does not apply to DRCT's claims. Even if it did, DRCT has alleged and established that it has third-party standing.

---

[4] In a footnote, Defendants request an open-ended "stay [of] all proceedings in this matter while DRCT pursues its remedies through the administrative process." (Def. Mem. at 30 n.20.) Defendants have now separately moved for a stay (ECF No. 33) and DRCT will respond by the Court-ordered deadline.

## A. P&A Systems Are the Archetypical Associational Standing Plaintiffs and DRCT Has Alleged and Established Associational Standing

DRCT has pleaded facts establishing that it has associational standing, and has now submitted evidence demonstrating associational standing. Defendants do not dispute (or even acknowledge) that DRCT has pleaded facts establishing associational standing or that DRCT can, in fact, establish that it has associational standing.

To establish associational standing, an organization must show that: (1) the organization is the functional equivalent of a voluntary membership organization; (2) its members would have standing to sue in their own right; (3) the interests that it seeks to protect are germane to the organization's purpose; and (4) neither the claim nor the requested relief require participation of individual members. *See Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343-45 (1977) (listing factors two through four, and further finding that organization "performs the functions of a traditional trade association"). DRCT need not establish the fourth factor because that factor is prudential and DRCT is a P&A System statutorily authorized to enforce its constituents' rights through litigation. *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996) (final *Hunt* factor is prudential).[5]

### 1. This Court Has *Twice* Held that DRCT's Predecessor Had Associational Standing

This Court has *twice* held that DRCT's predecessor (OPA) had associational standing and Defendants do not offer any reason for the Court to reverse course and find — for the first time — that Connecticut's P&A System lacks associational standing.

---

[5] Several courts have held that Congress has abrogated the final *Hunt* factor for P&A systems. *See, e.g.*, *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378, 395 (D. Conn. 2009); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 307 (E.D.N.Y. 2008); *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1112–13 (9th Cir. 2003); *Tellis v. LeBlanc*, No. 18-cv-0541, 2019 WL 1474777, at *4 (W.D. La. Apr. 3, 2019); *Cmty. Legal Aid Soc'y, Inc. v. Coupe*, No. 15-cv-688-GMS, 2016 WL 1055741, at *2 (D. Del. Mar. 16, 2016).

In *Laflamme*, 605 F. Supp. 378, this Court held that OPA had associational standing to assert claims under the Fair Housing Act on behalf of its constituents. *Id.* at 395-98. This Court held OPA satisfied the *Hunt* requirements and emphasized that "organizations like OPA routinely are found to fit within the requirements for associational standing under *Hunt*." *Id.* at 397 (collecting cases).

In *State of Conn. Office of Prot. and Advocacy for Persons with Disabilities v. Conn.*, 706 F. Supp. 2d 266 (D. Conn. 2010), this Court again held that OPA had associational standing because it was "the functional equivalent of a voluntary membership organization," *id.* at 280-82, and its constituents were able to influence priorities and had indicia of membership, *id.* at 282-83. This Court relied heavily on aspects of OPA's advisory structure facilitating member influence, *id.* at 283, that remain at DRCT today. (FAC ¶¶ 10-23; Dorfman ¶¶ 6, 9-17; Alisberg ¶ 5.)

The decisions of other courts in this Circuit are in accord. *See, e.g.*, *Disability Advocates, Inc. v. Paterson*, 598 F. Supp. 2d 289, 307 (E.D.N.Y. 2019) (NY P&A had associational standing to bring ADA and Rehab Act claims); *Disability Rts. N.Y. v. N.Y. State*, No. 17-cv-6965-RRM-SJB, 2019 WL 2497907, at *8 (E.D.N.Y. June 14, 2019) ("[t]he cases that hold that a P&A system like [DRCT] has associational standing are legion" (collecting cases)); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 307 (E.D.N.Y. 2008) (NY P&A had associational standing to bring ADA, Rehab Act, and § 1983 NHRA claims "[i]n light of their statutory mandates . . .").

The Second Circuit has not squarely addressed this issue but has cited *OPA v. State of Conn.* without criticism,[6] and both the Ninth and Eleventh Circuits have held that P&A Systems

---

[6] *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 158-59 (2d Cir. 2012).

can rely on associational standing.[7]  In *Oregon Advocacy Ctr.*, 322 F.3d 1101, the Ninth Circuit

held that Oregon's P&A System had associational standing because, *inter alia*, its constituents

had "indicia of membership" and were "the functional equivalent of members."  *Id.* at 1111-

1112.  In *Doe v. Stincer*, 175 F.3d 879, 886 (11th Cir. 1999) the Eleventh Circuit held that

Florida's P&A System had associational standing because, *inter alia*, "[m]uch like members of a

traditional association, the constituents of the Advocacy Center possess the means to influence

the priorities and activities the Advocacy Center undertakes."  Other Courts of Appeal have held

that P&A Systems failed to satisfy the *Hunt* criteria based on the facts presented.[8]  But this Court

twice relied on *Mink* and *Stincer* and has found the decisions of those other Courts of Appeals to

be "unpersuasive . . . or distinguishable on their facts."  *Laflamme*, 605 F. Supp. 2d at 397.

### 2.  DRCT Has Again Alleged and Demonstrated that it Has Associational Standing

DRCT has alleged and established that it has associational standing under the *Hunt*

factors.

First, DRCT is the functional equivalent of a voluntary membership organization and

DRCT's Constituents possess the requisite "indicia of membership."  (*See generally* FAC ¶¶ 17-

23; Dorfman ¶¶ 9-17.)  For example:

---

[7] *See State of Conn. Office of Prot. and Advocacy for Persons with Disabilities*, 706 F. Supp. 2d at 280-282.

[8] *See Missouri Prot. & Advocacy Servs., Inc. v. Carnahan*, 499 F.3d 803, 809-810 (8th Cir. 2007) (Missouri P&A System failed to establish associational standing where voting rights claims turn on the "particular incapacity" of each individual and the "record reflecting the basis upon which Missouri officials have denied the right to vote"); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr.*, 19 F.3d 241, 244 (5th Cir. 1994) (P&A System failed to establish associational standing for claims under Fair Housing Act where its constituents were "unable to participate in and guide the organization's efforts"); *see also Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019) (recognizing that P&A Systems can rely on associational standing but finding that Massachusetts P&A System did not satisfy prudential *Hunt* factor (member participation) because claims "turn[ed] on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement").

- DRCT's Board of Directors, in compliance with PAIMI, is composed of members who broadly represent or are knowledgeable about the needs of the clients served by DRCT. (FAC ¶¶ 18-20; Dorfman ¶ 10.)

- DRCT's Advisory Council, in compliance with PAIMI, includes attorneys, mental health professionals, individuals from the public who are knowledgeable about mental illness, a provider of mental health services, individuals who have received or are receiving mental health services, and family members of such individual. The Chairperson of the Advisory Council also sits on DRCT's Board of Directors. (FAC ¶ 18; Dorfman ¶ 11; Alisberg ¶ 5.)

- DRCT's Advisory Council considers, nominates, and appoints its own members, including its Chairperson. Advisory Council members may be removed only upon recommendation by the Advisory Council to the Executive Director. (FAC ¶ 19; Dorfman ¶ 12.)

- DRCT's Advisory Council advises DRCT on policies, priorities, and activities to be carried out in protecting and advocating for the rights of individuals with mental illness. (FAC ¶¶ 18-19, 21-22; Dorfman ¶¶ 13-15, 17; Alisberg ¶ 5.)

- DRCT's Advisory Council voted to include priorities directed at ending the prolonged isolation and in-cell shackling of DRCT's Constituents, and authorized DRCT to take additional steps to end these practices, including the filing of this lawsuit. (FAC ¶ 22; Alisberg ¶ 11.)

- DRCT has a grievance procedure whereby a PAIMI-eligible client or client-applicant, their representative, or family member who is dissatisfied with a grievance decision made by the Executive Director may request an independent review by the Advisory Council. (FAC ¶ 20; Dorfman ¶ 16; Alisberg ¶ 5.)

Accordingly, DRCT's Constituents have the requisite "indicia of membership" and DRCT is the functional equivalent of a membership organization. *See State of Conn. Office of Prot. and Advocacy for Persons with Disabilities*, 706 F. Supp. 2d at 279-83; *Or. Advocacy Ctr.*, 322 F.3d at 1110.

Second, DRCT has alleged, and Defendants do not dispute, that DRCT's Constituents would have standing to sue in their own right, *i.e.*, that they have suffered concrete injuries (*e.g.*, FAC ¶¶ 3, 4, 55-76, 77-94), that Defendants have caused those injuries (*see, e.g.*, *id.* ¶¶ 68, 86, 96, 105, 120, 136, 139, 140, 156), and that a favorable verdict will likely redress those injuries

(*id.* ¶¶ 14-16).  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Defendants

concede that three of DRCT's Constituents have filed actions seeking to redress their conditions

of confinement and suggest that there are no jurisdictional barriers to such suits (Def. Mem. at

31-32).  *See EA Indep. Franchisee Ass'n, LLC v. Edible Arrangements Int'l, Inc.*, No. 3:10-cv-

1489 (WWE), 2011 WL 2938077, at *1 (D. Conn. July 19, 2011) (rejecting challenge to first

*Hunt* factor and denying motion to dismiss based on lack of standing).

Third, DRCT has alleged, and Defendants do not dispute, that the interests that DRCT

seeks to protect are germane to its purpose.  DRCT's statutory mandate is to "protect and

advocate the rights of such individuals through activities to ensure the enforcement of the

Constitution and Federal and State statutes."  42 U.S.C. § 10801(b)(2)(A).  DRCT and its

predecessor OPA have worked for years to address the prolonged isolation and in-cell shackling

of DRCT's Constituents.  (Alisberg ¶¶ 6-9; Dorfman ¶¶ 18-19.)  DRCT's Advisory Council

voted to set priorities for ending those practices and approved the commencement of this lawsuit

(FAC ¶ 22; Dorfman ¶ 23; Alisberg ¶ 11).  *See Laflamme*, 605 F. Supp. 2d at 396 ("the

requirement of germaneness is undemanding; mere pertinence between litigation subject and

organizational purpose is sufficient" (citation omitted)).

Finally, even if DRCT did have to establish the final *Hunt* factor (it does not), DRCT's

claims and the relief requested do not require the participation of DRCT's Constituents.  The

prospective injunctive relief that DRCT seeks — an end to prolonged isolation and in-cell

shackling of prisoners with mental illness — is not individualized based on the facts and

circumstances of any specific person.  (FAC ¶¶ 7, 174, 187, 205, 223; Dorfman ¶ 24.)  *See Hunt*,

432 U.S. at 343 (member participation not generally required where organization seeks

prospective or injunctive relief); *see also Laflamme*, 605 F. Supp. 2d at 396 (final *Hunt* factor

satisfied "where the organization seeks a purely legal ruling without requesting that the federal court award individualized relief to its members . . .").

### B. DRCT Has Organizational Standing Because Defendants' Continuing Systematic Abuse of Prisoners with Mental Illness Has Forced DRCT to Divert Limited Resources to that Issue and to File this Action

DRCT has pleaded facts establishing that it has direct organizational standing, and has now submitted evidence establishing organizational standing. Defendants do not dispute that DRCT has pleaded facts establishing direct organizational standing or that DRCT can, in fact, establish organizational standing.

To prove direct organizational standing, DRCT must allege (1) that it has suffered an "injury in fact," (2) that its injury is "fairly traceable" to Defendants, and (3) that a favorable decision is likely to redress that injury. *Lujan*, 504 U.S. at 560; *see also Centro de la Comunidad Hispana de Locus Valley v. Town of Oyster Bay*, 868 F.3d 104, 109-110 (2d Cir. 2017). DRCT has pleaded, and established, these elements.

First, DRCT has pleaded and established an injury in fact. An injury in fact includes a "perceptible impairment" of an organization's economic situation, even if the proximate cause of the economic injury is "'the organization's noneconomic interest in encouraging [a particular policy preference].'" *Mental Disability Law Clinic v. Hogan*, 853 F. Supp. 2d 307, 314 (E.D.N.Y. 2012) (quoting *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir 2011)); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). DRCT has diverted substantial resources to trying to remedy Defendants mistreatment of DRCT's Constituents, including their continued prolonged isolation and in-cell shackling. (FAC ¶ 24; Dorfman ¶¶ 18-21, 26-28; Considine ¶¶ 8-9; Alisberg ¶ 9.) DRCT's diversion of limited resources to these issues constitutes a "perceptible" injury. *See N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (diversion of "non-trivial" resources to grievances constitutes injury-in-fact), *cert.*

*denied*, 140 S. Ct. 956 (2020); *Mental Disability Law Clinic*, 853 F. Supp. 2d at 313 (diversion of "perceptible" resources to lawsuit constitutes injury-in-fact).

Second, DRCT has pleaded and established that its injury is directly traceable to Defendants' misconduct. (FAC ¶ 24; Dorfman ¶¶ 18-21, 26-28; Considine ¶¶ 8-9.) DRCT would not have suffered the substantial impairment of resources but for Defendants' continuing misconduct. *See Nnebe*, 644 F.3d at 156-57; *Mental Disability Law Clinic*, 853 F. Supp. at 313.

Third, DRCT's injury is redressable through this action, *i.e.*, a favorable decision means that DRCT will not have to continue to devote substantial resources to remedying the unconstitutional punishments being inflicted upon DRCT's Constituents. (Dorfman ¶ 29.) *See Nnebe*, 644 F.3d at 157-58 (finding organizational standing where if organization's lawsuit "proves successful, it will have secured a permanent benefit for itself, avoiding the need for further lawsuits on the claims presented here"); *N.Y. State Citizens' Coal. for Children*, 922 F.3d at 75 (finding organizational standing where successful lawsuit would avoid need for continued devotion of resources to litigated issues).

## C. Prudential Third-Party Standing Concerns Do Not Trump DRCT's Article III Standing

DRCT has established both associational standing and organizational standing; Defendants challenge neither. Instead, Defendants contend that the Court should dismiss DRCT's claims based on the prudential third party-standing doctrine. (Def. Mem. at 31-33.) This doctrine has, in the past, been viewed as a reason for the federal courts to decline cases in which the plaintiff had Article III standing but was "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (internal quotation omitted). In those circumstances, plaintiffs were permitted to proceed where, *inter alia*, the showed (1) a close relationship to the

27

injured party and (2) that there is a hindrance to the injured party's ability to protect his or her own interests. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-130 (2004). Today, there is "considerable uncertainty" regarding the continued existence of the third-party standing doctrine. *See N.Y. State Citizens' Coal. for Children*, 922 F.3d at 75 (citing *Lexmark Int'l*, 572 U.S. at 127 n.3). But even assuming it remains a consideration, Defendants' argument is unavailing.

To begin with, Defendants do not cite any cases dismissing a P&A System's claims because it failed to allege or prove that it satisfied the exception to the prudential third-party standing bar. The Second Circuit has never held that a P&A System must allege or prove that it satisfies the exception to the prudential third-party standing bar and cannot rely on associational or direct organizational standing. The Second Circuit has held — *outside* of the P&A context — that Section 1983 rights are personal and that an association bringing Section 1983 claims on its members' behalf must show (1) organizational standing and (2) that the third-party standing exception is satisfied. *See N.Y. State Citizens' Coal. for Children*, 922 F.3d at 75-76. But even if that did apply to P&A Systems, it does not foreclose DRCT's Section 1983 claims here because DRCT has organizational (and associational standing) as shown above, is statutorily authorized to pursue its claims, and also satisfies the third party standing exception.[9]

> **1.      DRCT Is a Statutorily-Created P&A System Vested with Statutory Authority to Prosecute Claims on Behalf of Its Constituents**

Congress has clearly and unequivocally abrogated any prudential limitations on P&A Systems' ability to enforce the rights of their constituents by vesting them with the statutory authority to do just that: "A [P&A system] shall . . . have the authority to . . . pursue administrative, legal, and other remedies to ensure the protection of individuals with mental

---

[9] DRCT's claims under the ADA (Count III) and Rehab Act (Count IV) are not asserted through Section 1983 and are not, therefore, impacted by this argument.

illness. . . ." 42 U.S.C. §10807(a)(1)(B). Congress, in fact, has reaffirmed its intent that P&A Systems have standing to enforce their constituents' rights and acknowledged the resources wasted on litigating standing:

> The Committee heard testimony about the waste of scarce resources that are expended on litigating the issue of whether P&A systems have standing to bring suit. The Committee wishes to make it clear that we have reviewed this issue and have decided that no statutory fix is necessary because the current statute is clear that P&A systems have standing to pursue legal remedies to ensure the protection of and advocacy for the rights of individuals with developmental disabilities within the State. The Committee has reviewed and concurs with the holdings and rationale in Goldstein v. Coughlin, 83 F.R.D. 613 (1979) and Rubenstein v. Benedictine Hospital, 790 F. Supp. 396 (N.D.N.Y. 1992)

S. Rep. 103-120, 39, 1994 U.S.C.C.A.N. 164, 202-03.[10]

Because Congress abrogated the prudential limitation, prudential limitations such as third party standing cannot bar DRCT's claims where, as here, it has established associational and organizational standing. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (Congress can abrogate prudential standing limitations); *see also In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 534–35 (S.D.N.Y. 2014) (where Congress had abrogated prudential standing and authorized States to bring antitrust suits, "so long as they have shown they have standing under Article III, the standing inquiry is at an end"); *DMJ Assocs., L.L.C. v. Capasso*, 288 F. Supp. 2d 262, 267 (E.D.N.Y. 2003) (Congress "abrogated the prudential standing requirements under [CERCLA], and the only question at issue in this case is whether plaintiff has standing under Article III . . .").

---

[10] *See Goldstein v. Coughlin*, 83 F.R.D. 613, 614 (W.D.N.Y. 1979) ("PASDD is the advocacy system in New York. Given the Congressional purpose to provide retarded persons with legal representation, as revealed in s 6012, and given PASDD's responsibilities as the designated advocacy system for this state, PASDD need show no injury to itself in order to have standing in this action."); *Rubenstein v. Benedictine Hosp.*, 790 F. Supp. 396, 408 (N.D.N.Y. 1992) ("subsection (a)(1)(B) clearly confers upon a 'system,' and thus the entities with which it contracts, the right to 'pursue ... legal remedies to ensure the protection of mentally ill individuals who are receiving care or treatment in the State.'").

## 2. DRCT Satisfies the Traditional Third-Party Standing Exception

Defendants' argument fails even if Congress had not abrogated this prudential limitation, because DRCT has a close relationship to DRCT's Constituents and that there is a hindrance to their ability to protect their own interests. *See Kowalski*, 543 U.S. at 129-30; *Camacho v. Brandon*, 317 F.3d 153, 159-160 (2d Cir. 2003).

DRCT has alleged and demonstrated, and Defendants do not dispute (Def. Mem. at 31), that DRCT has a "close relationship" with DRCT's Constituents. (Dorfman ¶¶ 15-17.) *See N.Y. State Citizens' Coal. for Children*, 922 F.2d at 75 (close relationship shown where constituents authorized association to file suit).

DRCT has also alleged and established a hindrance to DRCT's Constituents' ability to assert their own interests. (*See, e.g.*, FAC ¶¶ 65-67; Dorfman ¶ 25; Alisberg ¶ 12.) The third-party standing rule requires a hindrance or "mere 'practical disincentive to sue' — such as a desire for anonymity or the fear of reprisal"; it "does not demand anything near impossibility of suit." *N.Y. State Citizens' Coal. for Children*, 922 F.3d at 75. Here, DRCT has alleged, and Defendants have not disputed, that "DOC staff have . . . threatened retaliation if prisoners file a grievance or lawsuit . . ." (FAC ¶ 66; *see also* Dorfman ¶ 25; Alisberg ¶ 12.) That allegation, by itself, shows that DRCT's Constituents face a practical disincentive to sue. *See N.Y. State Citizens' Coal. for Children*, 922 F.3d at 75; *see also Camacho*, 317 F.3d at 160 (finding that third party may be hindered in vindicating his own rights based on "the possibility that instituting litigation on his own behalf may only incur further retribution").

But DRCT's Constituents face additional substantial hindrances as well. (*See, e.g.*, Dorfman ¶ 25; Alisberg ¶ 12.) For example, DRCT's Constituents suffer from mental illness. Defendants' suggestion that prisoners with serious mental illness locked in concrete cells 22+ hours per day — when they are not left shackled alone in a filthy "strip cell" — do not face any

hindrance to litigating the constitutionality of their mistreatment rings hollow. These prisoners also lack resources to retain counsel to cover the substantial costs of litigation. *See Powers v. Ohio*, 499 U.S. 400, 414-15 (1991) (recognizing "practical barriers to suit" including "economic burdens of litigation"); *see also Nashville Cmty. Bail Fund v. Gentry*, No. 3:20-cv-00103, ---F. Supp. 3d ---, 2020 WL 6273913 at *13 (M.D. Tenn. Oct. 26, 2020) (finding that third party criminal defendants face obstacles including lacking resources sufficient to pursue their claims).

In addition, DRCT's Constituents face the possibility of mootness. Despite that DRCT's Constituents may be serving lengthy sentences, Defendants have demonstrated they will litigate these sorts of claims for years on end. As noted above (*see supra* Part I.B.1), DOC has been litigating the *Reynolds* case for more than seven years already. Accordingly, potential mootness is yet another hindrance to DRCT's Constituents bringing suit here. *See, e.g.*, *Nashville Cmty. Bail Fund*, 2020 WL 6273913 at *13 (finding that third party criminal defendants face obstacles including potential mootness).

Defendants' sole retort is that the three DRCT Constituents identified by name in DRCT's Complaint have filed numerous lawsuits over the past several years challenging their mistreatment while in DOC custody. (Def. Mem. at 31-32.) But Defendants' argument proves too much. Defendants merely highlight that the DRCT Constituents who felt comfortable being identified in DRCT's Complaint were those already known to Defendants as having challenged their conditions of confinement in court. Moreover, the fact that these prisoners had not been able to remedy the conditions of confinement underscores the hindrance that they, and other prisoners with mental illness, face.

The cases that Defendants cite to support their position are distinguishable. *See Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39-40 (2d Cir. 2015) (adult-oriented nightclub's claims that

ordinance violated First Amendment rights of officers and shareholders barred by prudential third-party standing limitation where no allegation or evidence that officers or shareholders would have any difficulty asserting their own interests); *Mental Hygiene Legal Serv. v. Cuomo*, 13 F. Supp. 3d 289, 301-02 (S.D.N.Y. 2014) (legal services association's facial challenge to provisions of New York Sex Offender Management and Treatment Act barred by prudential third-party standing concerns where its clients could have asserted the claims directly).

Finally, one of the lead cases cited by Defendants is particularly instructive. In *Dunn v. Dunn*, the Alabama P&A filed suit alleging that the Alabama Department of Corrections provided inadequate mental health treatment in violation of the Eight and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983. 219 F. Supp. 3d at 1164-65. The court held that the Alabama P&A had associational standing and reiterated the barriers that the P&A's constituents face in advocating for themselves:

> P & As have an essential role in advocating on behalf of prisoners with disabilities, whether mental or physical, that render it difficult or impossible for them to advocate for themselves. . . . In passing PAIMI, and in authorizing P & As to engage in legal advocacy on behalf of mentally ill constituents, Congress recognized that these constituents' impairments will often make it difficult for them to recognize, understand, articulate, and advocate for their own rights.

*Id.* at 1176-77.

This was true when Congress passed PAIMI, it was true when the court ruled in *Dunn v. Dunn*, and it remains true today. DRCT's claims in this case are the quintessential claims that Congress envisioned could be brought by a P&A System. This Court has jurisdiction over DRCT's claims, and must accordingly exercise its authority.

## CONCLUSION

For all of the reasons set forth above, Defendants' motion to dismiss should be denied in its entirety.

Dated: April 2, 2021

Kyle Mooney (*pro hac vice*)
Eric Lin (*pro hac vice*)
Neal Burstyn (*pro hac vice*)
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Phone: (212) 468-8000
Fax: (212) 468-7900
Email: kmooney@mofo.com
        elin@mofo.com
        nburstyn@mofo.com

Dan Barrett (ct29816)
Elana Bildner (ct30379)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
Phone: (860) 471-8471
Email: e-filings@acluct.org

Hope Metcalf (ct424312)
Ali Gali (Law Student Intern)
Karen Chikezie (Law Student Intern)
Luke Connell (Law Student Intern)
Lowenstein International Human Rights Clinic
Yale Law School
P.O. Box 208215
New Haven, CT 06520
Phone: (203) 432-9404
Email: hope.metcalf@ylsclinics.org

Kasey Considine (ct30756)
Disability Rights Connecticut (DRCT)
846 Wethersfield Avenue
Hartford, CT 06114
Phone: (860) 297-4300
Fax: (860) 296-0055
Email: kasey.considine@disrightsct.org

*Counsel for Plaintiff Disability Rights
Connecticut, Inc.*