UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DISABILITY RIGHTS CONNECTICUT, INC., on behalf of its constituents,<br><br>Plaintiff,<br><br>v.<br><br>CONNECTICUT DEPARTMENT OF CORRECTION;<br><br>ANGEL QUIROS, Acting Commissioner, Connecticut Department of Correction, in his official capacity; and<br><br>ROGER BOWLES, Warden, Northern Correctional Institution, in his official capacity,<br><br>Defendants. | Civil Action No. 3:21-cv-00146-KAD<br><br>October 15, 2021 |

## JOINT STATUS REPORT

Pursuant to the Court's August 24, 2021 Order (ECF No. 73), Plaintiff Disability Rights Connecticut, Inc. ("Plaintiff" or "DRCT") and Defendants Connecticut Department of Correction ("DOC"), Angel Quiros, and Roger Bowles (collectively, "Defendants"; collectively with DRCT, the "Parties") submit this Joint Status Report regarding the procedural posture, the status of the mediation, and a further stay of discovery.

**I.      PROCEDURAL POSTURE**

On February 4, 2021, DRCT commenced this action.  (ECF No. 1.)  On February 18, 2021, DRCT filed its First Amended Complaint.  (ECF No. 24.)

On March 12, 2021, Defendants moved to dismiss DRCT's claims on two grounds: (1) DRCT's claims are not ripe due to failure to exhaust administrative remedies as required under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"); and

ny-2263379

(2) DRCT lacks standing to assert third-party claims on behalf of prisoners with mental illness. (ECF No. 31.)  DRCT opposed Defendants' motion to dismiss. (ECF No. 38.)  Defendants' motion to dismiss has been fully briefed and pending before the Court since April 16, 2021.

On March 24, 2021, DRCT served its First Requests for the Production of Documents, its First Set of Interrogatories, and a Request for Entry on Defendants seeking an inspection of Northern Correctional Institution.  On March 25, 2021, Defendants moved to stay discovery pending resolution of their motion to dismiss.  (ECF No. 33.)

On March 26, 2021, the Court suspended discovery pending resolution of Defendants' stay motion.  (ECF No. 35.)  On April 29, 2021, the Court held a hearing on Defendants' stay motion. (ECF Nos. 52, 54.)  On May 7, 2021, the Court granted in part, and denied in part, the Defendants' stay motion and ordered discovery stayed until July 1, 2021, and ordered the Parties to file a Joint Status Report on July 15, 2021.  (ECF No. 56.)  The Parties have since agreed to and proposed further extensions of the stay of discovery in light of their ongoing mediation.  (*See* ECF Nos. 66, 67 (staying discovery through August 17, 2021), 72, 73 (staying discovery through October 15, 2021.)

## II. STATUS OF MEDIATION

On April 30, 2021, the Court ordered the Parties to mediation before Magistrate Judge Fitzsimmons.  (ECF No. 55.)

On May 26, 2021, the Parties held a pre-conference mediation call with Judge Fitzsimmons.  (ECF No. 58.)  The Parties subsequently exchanged mediation briefs and letters regarding the PROTECT Act, Governor Lamont's veto of the PROTECT ACT, Executive Order 21-1 ("EO 21-1"), and terms on which DRCT proposes resolving its claims.

ny-2263379

The Parties have also held four mediation conferences with Judge Fitzsimmons: June 16, 2021; July 14, 2021; July 26, 2021; and August 10, 2021. The Parties have not been able to resolve their dispute.

## III.    FURTHER STAY OF DISCOVERY

The Parties have not reached an agreement regarding a further stay of discovery. The Parties' respective positions are set forth below.

**DRCT's Position**: DRCT does not believe that any further stay is warranted, that the stay should expire by its own terms on October 15, 2021, and that the Parties should move forward with the litigation. DRCT is willing to in good faith continue to try to reach an amicable settlement, including by further mediation. But DRCT can no longer agree to defer the prosecution of its claims in light of Governor Lamont vetoing the PROTECT Act, the issuance of EO 21-1, and Defendants' failure to agree to work toward a resolution that will protect DRCT's Constituents from continued mistreatment and abuse in violation of the Eighth and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act (42 U.S.C. § 12132), and the Rehabilitation Act (29 U.S.C. § 794(a)).

Executive Order 21-1.  On June 30, 2021, Governor Lamont vetoed the PROTECT Act and, in its place, issued EO 21-1. EO 21-1 does not adequately protect DRCT's Constituents from the abuses that are the subject of DRCT's claims. For example, EO 21-1 does not require that Defendants eliminate in-cell shackling for prisoners with mental illness. Rather, EO 21-1 allows the use of in-cell restraints — and its demonstrably psychological and physical harmful effects — to continue unabated. In fact, since Northern's announced closure, DOC has retrofitted cells at MacDougall-Walker Correctional Institution to be used for in-cell shackling and continues to subject prisoners transferred from Northern to in-cell shackling at MacDougall-

Walker.[1]  DOC has also acknowledged that in-cell shackling is used throughout the DOC system, including to address acts of self-harm — acts that are often symptoms or manifestations of mental illness.[2]  EO 21-1 merely requires that by October 1, 2021, Defendants "report on steps taken and to be taken to decrease the use of in-cell restraints."  Defendants have not provided a copy of this report to DRCT in whole or in part, or identified any steps taken to eliminate the in-cell shackling of prisoners with mental illness.

EO 21-1 also does not adequately protect prisoners with mental illness against prolonged isolation.  By its terms, EO 21-1 allows prisoners with mental illness to be isolated for up to 20 hours per day, seven days a week, for the duration of their sentence regardless of the severity of their mental illness or the impact of the isolation on their mental illness.  For example, prisoners with severe mental illness who had demonstrated a pattern of self-harm and suicide attempts could be locked alone in their cells for up to 20 hours per day for decades regardless of the deterioration in their mental health or risk of severe self-harm or suicide.  More fundamentally, EO 21-1 includes a broad "disciplinary status" exception pursuant to which prisoners with mental illness could be isolated in their cells (i) 22 hours per day for up to 15 consecutive days or for up to 30 days in any 60-day period until December 1, 2021; or (ii) up to 20 hours per day indefinitely.  EO 21-1 provides no guidance as to when disciplinary status is justified, and the DOC's own administrative directives are vague, far-reaching, and may be unilaterally changed at any time.

---

[1] *See* "In-cell shackling has continued after a supermax prison closed, but the DOC promises change," *The Connecticut Mirror*, July 11, 2021, https://ctmirror.org/2021/07/11/ct-doc-defends-the-continued-use-of-in-cell-shackling-in-the-wake-of-northerns-closure-but-promises-change/.

[2] *See id.*

At present, disciplinary status encompasses administrative detention, punitive segregation, and chronic discipline.  The current administrative directives provide that administrative detention may be used when (1) "it is felt that failure to remove the inmate from population would present a danger to staff, the inmate or any other inmate, or cause an immediate threat of disruption to the facility" (A.D. 9.4.3.B) or (2) an individual has done something sufficient to warrant possible placement into restrictive housing (A.D. 9.4.3.B).  The current administrative directives provide that punitive segregation may be used to punish prisoners for "Class A" or "Class B" offenses but do not specify those offenses and leave to each unit the authority to establish its own written rules concerning inmate conduct. (A.D. 9.5.7.A.)  Neither EO 21-1 nor the current administrative directives establishes any threshold for the imposition of punitive segregation, requires that any imposed punitive segregation be proportional to the Class A or B offense for which it is imposed, or narrowly defines Class A and Class B offenses in such a way as to check the broad discretion of corrections officers to impose punitive segregation in response to a variety of behaviors — behaviors that, again, may be symptoms or manifestations of mental illness.

There is also no outer limit to how many times a prisoner with mental illness could be subjected to isolated confinement or prolonged isolated confinement (up to December 1, 2021) based on disciplinary status.  In fact, a prisoner with mental illness could be subject to prolonged isolation for 15 days each month for the entire duration of their sentence, notwithstanding their mental illness and the psychological and physical trauma caused by their recurring prolonged isolation.

In sum, EO 21-1 allows Defendants to continue to subject prisoners with mental illness to repeated cycles of isolated confinement for even the most minor of infractions, including those

related to symptoms of mental illness. This is particularly problematic here where Defendants have a long history of doing exactly that.[3]

Mediation. DRCT has worked over the past several months to try to resolve its claims with Defendants. Since June, the Parties have exchanged nearly 275 written pages of information and held four separate mediation sessions with Judge Fitzsimmons. For example, DRCT and its expert consultants devoted substantial time and resources to assist DOC with issues that DOC was considering during implementation of EO 21-1. DRCT synthesized a substantial amount of information contained in policies, articles, and papers from jurisdictions across the country, coordinated and scheduled numerous meetings with its consultants, and provided detailed written responses to DOC well in advance of EO 21-1's October 1 deadlines, as well as DOC's own internal September 15 date. But Defendants have not committed to a single substantive point of relief that would resolve DRCT's claims let alone agreed to consider the information that DRCT provided in support of DOC's implementation of EO 21-1. While the Parties agreed to schedule another mediation session with Judge Fitzsimmons during the first two weeks of October, that session has not occurred or been scheduled and Defendants have not agreed to any dates proposed by either Judge Fitzsimmons or DRCT.

DRCT remains amenable to continuing to try to mediate its claims but cannot agree to any further stay of discovery. DRCT also disagrees that a stay should continue or that its claims be dismissed based on a failure to exhaust "administrative remedies" as set forth in its Opposition to Defendants' Motion to Dismiss (ECF No. 38) and its Opposition to Defendants' Motion to Stay (ECF No. 44). To the extent an additional mediation session occurs, DRCT and

---

[3] As alleged in DRCT's First Amended Complaint, Defendants routinely punish prisoners with mental illness with prolonged isolation (e.g., extended time in Administrative Segregation) in response to even minor disciplinary violations that are manifestations of their underlying illness. (See, e.g., FAC ¶¶ 52, 53, 102, 115, 120, 136, 147, 148, 154.)

Defendants are well-equipped to handle both in parallel. *See, e.g.*, *This, LLC v. Jaccard Corp.*, 2016 WL 11582700, at *3 (D. Conn. Nov. 30, 2016) ("balancing the competing demands of conducting discovery while simultaneously preparing for mediation is a task that experienced litigators regularly perform").

Next Steps. DRCT proposes that the stay expire by its own terms on October 15, 2021, that the Parties begin to meet and confer regarding a Second Amended Rule 26(f) Report by October 22, 2021; and that the Parties file a Second Amended Rule 26(f) Report and exchange Rule 26(a) Disclosures by October 29, 2021.

**Defendants' Position**:

The defendants disagree with the plaintiff's position.

With respect to continuing the stay of discovery in order to mediate this case, it continues to be the defendants' position that mediation is compelled by the plaintiff's own enabling legislation. As argued in the defendants' motions to dismiss and to stay discovery (Docs. 31, 33), the Protection and Advocacy for Individuals with Mental Illness Act requires the plaintiff to exhaust mediation efforts. Indeed, 41 U.S.C. § 10807 requires such exhaustion prior to commencing suit. Plaintiff failed to exhaust their mediation obligations prior to commencement of the instant matter, and even concedes supra that it continues to be willing to participate in mediation.

Further, it is important to note that, since the parties began mediation, the defendants closed the correctional facility that was the near total focus of the operative complaint, dramatically increased out of cell time for the inmate population and made additional changes to procedures governing not only the general inmate population but the subset of inmates for whom the plaintiff seeks to advocate. These changes include:

*working towards significantly increasing visitation opportunities;

*increasing use of virtual visits;

*substantially reducing the use of in-cell restraints by custody staff;

*changing the DOC database to track length of time inmates are held on restraint status;

*increasing training on the propriety of in-cell restraints;

*assuring that inmates on punitive segregation and administrative segregation statuses receive a minimum of 2 hours of recreation per day, 7 days per week;

*building in an additional level of review for restrictive housing status of vulnerable populations (including those with high mental health scores); and

*capping punitive segregation at 15 days for any incident.

These changes, along with the closing of NCI, demonstrate that DOC has made significant efforts to improve the living conditions of the inmate population. Critically, for the purposes of this litigation, these efforts demonstrate that much of the plaintiff's operative complaint is stale, if not moot, which augurs strongly in favor of continuing mediation and focusing the issues of dispute among the parties.

Finally, and without disclosing the specific settlement discussions of the parties, DRCT erroneously states that the defendants have refused to agree to any substantive demands advanced by the plaintiff in the parties' discussions with Judge Fitzsimmons. In their most recent joint session with Judge Fitsimmons on August 10, 2021, the defendants agreed to accept certain materials and arrange a meeting between plaintiff's experts and representatives of the DOC to discuss challenging issues raised by the several committees responsible for formulating the defendants' compliance with the Governor's Executive Order referenced *passim*. The parties reached this agreement with full knowledge that the defendant was required by the

Executive Order to comply with that order substantially by October 1, 2021 and that DOC had established an internal deadline of September 15, 2021 for the several agency committees to complete their work and make their final policy changes for approval by the DOC Commissioner. The defendants identified their issues to the plaintiff on August 13, 2021 and the Plaintiff waited several weeks, until September 4, 2021 to provide their materials and suggestions, leaving inadequate time for the defendants to meaningfully investigate the plaintiff's submissions. The defendants then shifted their focus to complying with the Governor's Order, with the expectation that mediation would resume thereafter. Scheduling conflicts have delayed scheduling our next session with Judge Fitzsimmons.

It is respectfully submitted that, given the DOC's compliance with EO 21-1, the need for mediation is even more apparent. The Executive Order, DOC's policy changes and the closing of Northern have substantially altered the foundation upon which the plaintiff's original action is premised, and the alternative to mediation at this point is costly litigation premised upon a stale complaint that does not take into account the many changes discussed above. The plaintiff's statutory obligation to mediate their concerns prior to suit mandated by their own enabling legislation has not been satisfied.

DATED: October 15, 2021

By: __/s/_____
Kyle Mooney (*pro hac vice*)
Eric Lin (*pro hac vice*)
Neal Burstyn (*pro hac vice*)
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019
Phone: (212) 468-8000

By: __/s/_____
Terrence M. O'Neill (ct10835)
Edward D. Rowley (ct30701)
Assistant Attorneys General
110 Sherman Street
Hartford, CT 06105
Tel: (860) 808-5450
Fax: (860) 808-5591
Email: terrence.oneill@ct.gov

Fax: (212) 468-7900
Email: kmooney@mofo.com
      elin@mofo.com
      nburstyn@mofo.com

Dan Barrett (ct29816)
Elana Bildner (ct30379)
ACLU Foundation of Connecticut
765 Asylum Avenue, 1st Floor
Hartford, CT 06105
Phone: (860) 471-8471
Email: e-filings@acluct.org

Hope Metcalf (ct424312)
Ali Gali (Law Student Intern)
Karen Chikezie (Law Student Intern)
Luke Connell (Law Student Intern)
Lowenstein International Human Rights Clinic
Yale Law School
P.O. Box 208215
New Haven, CT 06520
Phone: (203) 432-9404
Email: hope.metcalf@ylsclinics.org

Kasey Considine (ct30756)
Disability Rights Connecticut (DRCT)
846 Wethersfield Avenue
Hartford, CT 06114
Phone: (860) 297-4300
Fax: (860) 296-0055
Email: kasey.considine@disrightsct.org

*Counsel for Plaintiff Disability Rights Connecticut, Inc.*

Edward.rowley@ct.gov

*Counsel for Defendants Connecticut Department of Correction, Angel Quiros, and Roger Bowles*