**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DISABILITY RIGHTS                    :
CONNECTICUT, INC.,                   :
                                     :
    Plaintiff,                   :
                                     :  CASE NO. 3:21-cv-146(KAD)
    v.                           :
                                     :
CONNECTICUT DEPARTMENT OF            :
CORRECTION, ET AL,                   :
                                     :
    Defendants.                  :

## <u>RULING ON PLAINTIFF'S MOTION TO COMPEL INFORMATION WITHHELD ON MEDICAL PRIVACY OBJECTION AND PLAINTIFF'S MOTION TO SEAL</u>

Plaintiff Disability Rights Connecticut, Inc. ("DRCT") has filed a motion to compel disclosure of medical and mental health information that Defendant Connecticut Department of Correction ("DOC") has redacted or withheld from its discovery production. (Dkt. #134).  Defendant objects, arguing *inter alia* that the information at issue is subject to a constitutional right of privacy and that DRCT's governing regulations do not allow DRCT to obtain the information at issue absent a release from the individual whose information would be disclosed.  (Dkt. #147). DRCT also filed a motion to seal exhibits filed in connection with its motion to compel, to which the DOC made no response. (Dkt. #132).  After reviewing the parties' submissions, DRCT's motion to compel information withheld based on medical privacy considerations is GRANTED in part and DENIED in part, and DRCT's motion to seal is GRANTED.

1

### I.    Legal Standard

Rule 26 of the Federal Rules of Civil Procedure allows a party to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Pursuant to Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  The party moving to compel discovery bears the burden of demonstrating "that the requests are within the scope of Rule 26(b)(1)."  Conservation L. Found., Inc. v. Shell Oil Co., No. 3:21-CV-00933 (JAM), 2023 WL 5434760, at *11 (D. Conn. Aug. 22, 2023).  After the party requesting discovery has demonstrated relevance according to the requirements of Rule 26, "the party resisting discovery bears the burden of showing why discovery should be denied."  Id. (quoting Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009)) (internal citation omitted).

### II.   Background and Procedural History

DRCT's operative complaint alleges that the DOC's utilization of in-cell shackling on prisoners with mental illness violates the Eighth and Fourteenth Amendments of the United States Constitution, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act.  (Dkt. #134 at 5-6, dkt. #87).

To support these allegations, DRCT sought the complete medical files of certain prisoners as well as reports that are prepared by the DOC in response to medical or custody incidents. (Dkt. #134 at 6-7). The DOC objected to this production. Id. at 6. The parties resolved the DOC's objection by allowing DRCT to obtain mental health and medical releases from certain prisoners, after which the DOC disclosed the complete prisoner medical files for the individuals who had signed releases. Id. The parties dispute whether this compromise resolved all issues concerning the production of prisoners' mental health and medical information. The DOC maintains that DRCT agreed in late-2022 that it would obtain authorizations for the release of any and all confidential health information. (Dkt. #147 at 8-9). DRCT contends that this agreement only resolved the DOC's objection to producing complete prisoner medical files. (Dkt. #149 at 11).

To resolve the dispute, DRCT filed the instant motion to compel on March 22, 2024, which was referred to the undersigned by the Honorable Kari A. Dooley. (Dkt. #134, 139). Between March 1, 2024 and April 5, 2024, DRCT filed four additional discovery motions, all of which were referred to the undersigned by Judge Dooley. (Dkts. #129, 130, 132, 134, 136, 139, 144, 146, 154). On May 3, 2024, the parties jointly requested a status conference, or a stay of all case deadlines pending the

resolution of Plaintiff's outstanding motions.  (Dkt. #153).
The undersigned held a status conference on May 14, 2024.
(Dkts. #155, 160).  At the conclusion of that conference, the
joint request for a stay was granted, and all outstanding
deadlines were stayed pending the Court's ruling on DRCT's
discovery motions.  (Dkt. #160).

   Shortly thereafter, the undersigned held a hearing on the
pending discovery motions.  (Dkt. #164, 167, 170).  At the
outset of the hearing, the parties reported that they had
resolved three of the five pending motions.  That same day, the
parties filed a joint stipulation reflecting this resolution.
(Dkt. #169).  The joint stipulation resolved DRCT's Motion to
Compel Responses to DRCT's Second Set of Interrogatories (dkt.
#129), DRCT's Motion to Compel Defendants to Produce Witnesses
in Response to DRCT's Outstanding Deposition Notices (dkt.
#144), and DRCT's Opposed Motion for an Extension of Time (dkt.
#136).  The undersigned adopted the joint stipulation and denied
the relevant motions as moot without prejudice to refiling as
outlined in the joint stipulation.  (Dkt. #171).

   Still pending are DRCT's Motion to Compel Defendants to
Produce Information Withheld on Medical Privacy Grounds (dkt.
#134) and DRCT's Motion to Seal exhibits filed in connection
with that motion (dkt. #132).  DRCT's motion to compel seeks an

order compelling the DOC to produce (1) emails and unredacted versions of emails responsive to DRCT's email requests, and (2) information responsive to DRCT's interrogatories.  (Dkt. #134 at 5).  In its motion, DRCT noted that it had separately moved to compel the DOC to respond to DRCT's interrogatories, a dispute which was subsequently resolved by the parties' joint stipulation.  (Dkt. #134 at 5 n.2; dkt. #169 at 2-4). Accordingly, the information that remains in contention is information that was redacted from documents produced to DRCT or contained in documents withheld from DRCT based on the DOC's medical privacy objection.

### III. Discussion

The DOC raises several objections to the production of the medical and mental health information at issue.  First, the DOC contends that DRCT should be estopped from challenging the DOC's medical privacy objection because the parties previously resolved the dispute when DRCT agreed to obtain authorizations for the release of certain inmates' medical files.  (Dkt. #147 at 7-10).  Next, the DOC argues that disclosure of the medical and mental health information at issue is disallowed by the regulations that govern DRCT's organization and would violate the prisoners' constitutional right to privacy in their confidential health information and records.  Id. at 10-11.  For

the following reasons, the undersigned finds that DRCT is not estopped from seeking the records at issue.  However, DRCT must obtain authorizations from inmates to receive their identifying medical and mental health information in unredacted form.

*A. DRCT is not estopped from challenging the DOC's medical privacy objection.*

First, the DOC argues that DRCT should be estopped from raising the dispute regarding the redactions given "defendants' reliance on this resolution in conducting and producing discovery in this case, including the substantial time and resources required to redact such confidential health information in the defendants' email review and production." (Dkt. #147 at 10).  The DOC argues that it will be prejudiced due to the "substantial time and resources" devoted to redacting the information of prisoners for whom authorizations were not provided.  Id.

However, based on the Court's reading of the materials submitted by the parties, it is not clear that DRCT agreed to secure authorizations to obtain access to the information at issue.  DRCT argues that it agreed to obtain authorizations to gain access to the full medical files of particular inmates, even though it took the position that those files could be produced without an authorization.  (Dkt. #134 at 6; dkt. #149

at 11).  The DOC counters that DRCT "backed off" its initial position and agreed that it had to obtain authorizations for the release of confidential health information.  (Dkt. #147-1 at 3).  Absent more information, the Court is not able to determine whether DRCT did or did not maintain the position that it was not required to secure authorizations but agreed to obtain them to gain access to the medical files.  If DRCT simply agreed to secure authorizations to obtain the full medical files, the undersigned agrees with DRCT that this agreement by itself would not necessarily waive DRCT's position with regards to other discovery materials such as the emails and incident reports at issue.

In any event, the record does not demonstrate that the DOC notified DRCT of the extent of the material that the DOC planned to redact, and that the redactions would withhold confidential medical information from the other discovery materials for the inmates who had not authorized disclosure.[1]  Had the DOC notified

---

[1] The parties also briefed this issue in the other, now resolved, discovery motions.  The DOC argued in its objection to DRCT's motion for extension of time that the DOC had "indicat[ed] that much of the time in reviewing and producing emails was caused by the need to review and redact such privileged health information."  (Dkt. #138 at 16).  From the materials submitted to the Court, the communications regarding the DOC's delay due to redactions included a February 15, 2024 email from Attorney Rowley stating that "certain emails...can take substantial time to review depending on...the need for redactions."  (Dkt. #142-4 at 2).  This email did not specify that the redactions were of privileged health information.  A March 12, 2024 letter also referenced that the DOC was taking time to review and

DRCT that it would be redacting the information at issue, the
parties could have litigated this dispute before the DOC
expended the time and resources to redact the materials.
Therefore, the Court does not agree that the DOC will suffer
prejudice by having to un-redact records for which DRCT receives
an authorization, where the time and resources could have been
saved by fully resolving this issue prior to undertaking the
redactions.

B. *Federal law controls the parties' dispute regarding the*
   *DOC's medical privacy objection.*

In its opposition to DRCT's motion to compel, the DOC
denied that its medical privacy objection is rooted exclusively
in Connecticut law.  (Dkt. #147 at 5).  During oral argument,
defense counsel again conceded that federal law would control
the dispute regarding its medical privacy objection but argued
that state law may nevertheless be considered by the Court.

DRCT is the designated protection and advocacy system ("P&A
system" or "P&A organization") for Connecticut pursuant to the
Protection and Advocacy for Individuals with Mental Illness Act
("PAIMI Act"), 42 U.S.C. § 10801.  (Dkt. #87 at 4).  P&A systems
like Plaintiff are entitled to access records pursuant to

---

"redact[] appropriate materials" without specifying the redactions
were of privileged health information.  (Dkt. #145-19 at 3).

federal law notwithstanding state statutes which would otherwise preclude disclosure.  For example, in Connecticut Office of Protection & Advocacy for Persons With Disabilities v. Kirk, 354 F. Supp. 2d 196 (D. Conn. 2005), DRCT's predecessor organization brought an action against officials of the State of Connecticut Department of Mental Health and Addiction Services.  This action requested that the court order the production of documents relating to the death of two former residents of the defendant's facilities.  Id. at 197.  Defendants resisted production of the records, arguing that the records were shielded from disclosure pursuant to state statute.  Id. at 198.  When deciding cross-motions for summary judgment, the Honorable Dominic J. Squatrito identified the dispositive issue in the lawsuit as "the reconciliation of the federal statute providing plaintiff the authority to gather records to investigate potential abuse or neglect and the state statute shielding peer review records from disclosure."  Id. at 199.  Judge Squatrito concluded that a P&A's authority to seek records expressly preempted any state law to the contrary, and that "the federal scheme will apply regardless of the laws of the state."  Id. at 202.  Judge Squatrito ordered the defendant to produce the records at issue notwithstanding the fact that they fell under the state statute that would normally shield them from production.  Id.

Even outside the context of P&A systems, "questions about privilege in federal question cases are resolved by the federal common law." Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc., 164 F.3d 123, 126 (2d Cir. 1999).  While considerations of federal law control whether DRCT is entitled to disclosure of the information at issue, "federal courts are required to take account of the policies embodied in state law that recognize privileges or other rules of confidentiality." Haus v. City of New York, No. 03CIV.4915 RWSMHD, 2006 WL 1148680, at *2 (S.D.N.Y. Apr. 24, 2006).  Holjes v. Lincoln Nat'l Life Ins. Co., No. 3:21-CV-1277 (VDO), 2024 WL 1131115, at *3 n.2 (D. Conn. Mar. 15, 2024) ("Although state privilege law does not govern in a federal question case...state privacy rules may be considered in any federal case when determining whether discovery is appropriate.").  Therefore, while federal law controls the instant dispute, the policies undergirding Connecticut laws of privilege or confidentiality may be considered by the Court.

In its original objection to DRCT's first set of requests for production, the DOC pointed to Connecticut law codifying the privileges that cover communications with psychologists, psychiatric and mental health providers, physicians, surgeons or other health care providers, and social workers.  (Dkt. #135-2 at 2) (citing Conn. Gen. Stat. §§ 52-146d(7), 52-146o, 52-

146q(b)).  Additionally, the DOC pointed to special protections
in Connecticut law for medical records that discuss testing,
treatment, or diagnosis of HIV.  Id. (citing Conn. Gen. Stat. §
19a-583).  The Connecticut Supreme Court has noted that the
"principal purpose" behind the privilege against disclosure of
psychiatric communications is "to give the patient an incentive
to make full disclosure to a physician in order to obtain
effective treatment free from the embarrassment and invasion of
privacy which could result from a doctor's testimony."  Falco v.
Inst. of Living, 254 Conn. 321, 328 (2000).  This principle
applies to the other privileges regarding communications with
health care providers, which were enacted "to address the need
'to protect the confidentiality of communications in order to
foster the free exchange of information from patient to
physician....'"  Jarmie v. Troncale, 306 Conn. 578, 607-08
(2012) (quoting Edelstein v. Dept. of Public Health & Addiction
Services, 240 Conn. 658, 666 (1997)).  Similarly, the statute
which protects the confidentiality of medical records concerning
HIV was designed to facilitate treatment of the disease, during
a time when the stigma associated with HIV discouraged
individuals from seeking testing or treatment.  Doe v. Marselle,
236 Conn. 845, 852 (1996) (explaining that the requirements of
informed consent and confidentiality "are aimed at helping
health care providers to identify those people with the disease,

11

to treat them and to educate them in an attempt to put an end to
the epidemic in our state"). Keeping in mind the Connecticut
public policy favoring full disclosure to health care providers
to encourage and facilitate effective treatment, the Court will
analyze the parties' arguments according to federal law.

   C. *The DOC is not entitled to withhold information based on*
      *DRCT's governing regulations.*

   The DOC argues that the federal regulations governing DRCT
as a P&A system do not allow for the release of privileged
health information and records without an authorization. (Dkt.
147 at 2). In its response to DRCT's Second Set of
Interrogatories, the DOC pointed to 42 C.F.R, 51.41(c).
According to 42 C.F.R. Section 51.41, "[a] P&A system shall have
access to the records of any of the following individuals with
mental illness: (1) An individual who is a client of the P&A
system if authorized by that individual or the legal guardian,
conservator or other legal representative." 42 C.F.R. §
51.41(b)(1). The DOC has not pointed to any cases, and the
Court is aware of none, where this regulation blocked access of
a P&A system to the medical records of its constituents in
discovery. More often, P&A systems bring actions pursuant to
this regulation to compel other entities to comply with the
regulation and provide medical records.

Courts within the Second Circuit have noted that P&A systems are imbued with statutory authority to pursue remedies to ensure the protection of their constituents, and that "[c]learly, the purpose of the statutes weighs in favor of robust disclosure." Disability Rts. New York v. Wise, 171 F. Supp. 3d 54, 60 (N.D.N.Y. 2016). In Disability Rights New York v. Wise, the court "agree[d] with DRNY that the [state agency] cannot withhold records based on their confidential nature." Id. at 61. *See also* Prot. & Advoc. For Persons With Disabilities v. Armstrong, 266 F. Supp. 2d 303, 320 (D. Conn. 2003) (finding P&A system was not required to obtain the consent of any next of kin to be entitled to the medical records of inmates who died by suicide). The regulations that the DOC contends should limit discovery in this matter are actually designed to facilitate P&A systems' access to records in furtherance of their statutory mandate to "protect and advocate the rights of [individuals with mental illness] through activities to ensure the enforcement of the Constitution and Federal and State statutes; and...investigate incidents of abuse and neglect of individuals with mental illness..." 42 U.S.C. § 10801(b)(2)(A)-(B). Therefore, the Court declines to deny DRCT's motion on this basis.

D. *Prisoners subjected to in-cell shackling have a*
   *constitutional right to privacy in their medical and mental*
   *health information.*[2]

DRCT argues that in cases where a plaintiff advocates on behalf of "vulnerable third parties, the disclosure of relevant mental health and medical information is appropriate." (Dkt. #134 at 12). In support of this argument, DRCT claims that the DOC has failed to establish that "the constitutional right to privacy covers any withheld information." (Dkt. #149 at 7). Relying on Matson v. Board of Education of the City School District of New York, DRCT argues that the Second Circuit has rejected the proposition that individuals have a broad right to privacy in medical information. 631 F.3d 57 (2d Cir. 2011). At oral argument, DRCT contended that the Second Circuit has only recognized a constitutional right to privacy for an HIV/AIDS diagnosis and gender identity issues.

DRCT is correct that "[a] general medical determination or acknowledgment that a disease is serious does not give rise *ipso*

---

[2] The parties dispute whether the DOC has waived its objection based on a constitutional right to privacy. (Dkt. #149 at 6-7; dkt. #147 at 6 n.3). However, even if the Court found that the DOC had failed to timely raise this objection, failure to object in a timely manner can be excused for good cause. Fed. R. Civ. P. 33(b)(4). As the constitutional right of privacy at issue is the privacy of third parties who have not been given an opportunity to weigh in on this dispute, the Court declines to find that this objection has been waived and will consider the parties' arguments on the merits.

*facto* to a constitutionally-protected privacy right," and that
the determination that a constitutional right of privacy
attaches to various serious medical conditions "proceed[s] on a
case-by-case basis."  Matson, 631 F.3d at 65-66.  However, the
Court does not agree that the Second Circuit in Matson cabined
the constitutional right to privacy in medical information only
to HIV/AIDS diagnoses and gender identity issues.  In Matson,
when discussing its decision in O'Connor v. Pierson, 426 F.3d
187 (2d Cir. 2005), the Second Circuit noted that in O'Connor,
it found that "[m]edical information in general, and information
about a person's psychiatric health and substance-abuse history
in particular, is information of the most intimate kind."  Id.
at 66 (quoting O'Connor, 426 F.3d at 201).  The court cited
other sources indicating that mental health issues carry the
"public opprobrium" that gives rise to a constitutional right of
privacy.  Id.[3]  *See also* Hancock v. County of Rensselaer, 882
F.3d 58, 66 (2d Cir. 2018) ("We have never held, in Matson or
elsewhere, that only medical records documenting conditions of
sufficient gravity and stigma may qualify for constitutional
privacy protection.").  Therefore, the medical information at
issue, which includes the mental health scores and diagnoses of

---

[3] Additionally, as the DOC noted during oral argument, the medical
information being withheld from DRCT may very well deal with the
specific issues of HIV/AIDS diagnosis and gender identity which DRCT
concedes would be protected by the constitutional right to privacy.

DOC inmates, is protected by the constitutional right of
privacy.

   While the prisoners' mental health and medical information is
protected by the constitutional right of privacy, this right is
not absolute.  Courts have found that where other important
considerations are at issue, and the requisite protections are
in place to ensure that the burden on privacy interests is
minimized, disclosure of protected information may be
appropriate.  For example, both parties point to Doe v. Meachum,
126 F.R.D. 444 (D. Conn. 1989) as supportive of their respective
positions.  Doe was a class action consisting of HIV-positive
inmates in the custody of the Connecticut Department of
Correction.  Plaintiffs in that action moved to compel, *inter
alia*, the medical and mental health records of absent class
members.  Id. at 448.  The defendants resisted such discovery,
arguing that prior to disclosure of these sensitive records, the
class members must sign consent forms, in the absence of which
the court should "permit only a random selection of redacted
medical records."  Id. at 448-49.  The court disagreed, finding
that because the records at issue were "sought by professionals
whose purpose it is to protect the constitutional rights of the
plaintiff class," it was "more important to the interests of
justice that the communications be disclosed, under the strict
parameters set forth in the protective order, than that the

16

relationship between patient and psychologist/psychiatrist be protected." Id. at 450.

In other cases where a party sought discovery that implicated the privacy rights of non-litigants, but the party seeking the discovery has brought the underlying lawsuit to vindicate other rights on behalf of the non-litigants, courts have undertaken a balancing test to determine whether disclosure of protected information is appropriate.  For example, Haus v. City of New York involved a class action brought on behalf of all individuals arrested during the course of a February 15, 2003 demonstration in Manhattan opposing the impending Iraq War.  No. 03CIV.4915 RWSMHD, 2006 WL 1148680 (S.D.N.Y. Apr. 24, 2006). The plaintiffs in Haus sought the arrest records for all people arrested during the demonstration.  Id. at *1.  Defendants objected, arguing that pursuant to New York law, arrest records are to remain under seal and can only be disclosed with the consent of each non-party arrestee.  Id.  In evaluating this dispute, the court analyzed other instances in which the privacy interests of non-litigants were implicated and found that the appropriate approach was a balancing test, weighing the privacy rights at issue against the importance of the information to the litigation and the protections that can be applied to the information.  Id. at *3-4 (collecting cases).  The court in Haus ordered the production of the arrest records with the names of

the arrestees redacted and other identifying information
deleted.  Id. at 4-5.

Accordingly, to determine whether DRCT's motion to compel
should be granted, the Court will conduct a balancing test
considering on one hand the intrusion on the privacy interests
of the prisoners and on the other hand the need for the material
to prosecute the litigation, the important rights the litigation
seeks to vindicate, and the procedural protections that can be
imposed to minimize the burden on the prisoners' privacy
interests.

   *E. DRCT must obtain signed authorizations to obtain the
      medical and mental health information that the DOC has
      withheld based on its privacy objection.*

Where a case "involves significant issues specially affecting
the public interest," that fact will weigh in favor of
disclosure.  Lora v. Bd. of Ed. of City of New York, 74 F.R.D.
565, 579 (E.D.N.Y. 1977).  In Lora, the Honorable Jack B.
Weinstein noted that "[o]nly strong countervailing public
policies should be permitted to prevent disclosure when, as
here, a suit is brought to redress a claim for violation of
civil rights under the Constitution."  Id.  Here, DRCT alleges
that the DOC's practices of in-cell shackling unfairly impacts
prisoners with mental illness in violation of the Eighth and

Fourteenth Amendments of the United States Constitution, Title
II of the Americans with Disabilities Act, and Section 504 of
the Rehabilitation Act.  (Dkt. #134 at 5-6).  Therefore, the
importance of the rights that DRCT seeks to vindicate in this
litigation weighs in favor of disclosure.  Additionally, the
ability of the Court to impose a protective order on the
information at issue also weighs in favor of disclosure, because
the burden on the privacy interests of the non-litigants can be
minimized by imposing an "attorney's-eyes only" restriction on
the unredacted records.

   However, the potential intrusion on the privacy interests of
the prisoners who have been subjected to in-cell shackling
weighs against disclosure.  As identified by DRCT, the
information being withheld includes the names and other
identifying information of persons with mental illness that have
been subjected to in-cell shackling, their mental health status,
and other medical information contained in in-cell shackling
descriptions and reports.  (Dkt. #134 at 7).  This information
is clearly sensitive, and as previously discussed, the Second
Circuit has recognized that "information about a person's
psychiatric health...is information of the most intimate kind."
O'Connor v. Pierson, 426 F.3d 187, 201 (2d Cir. 2005).  As the
potential intrusion on the privacy interests of the prisoners is
significant, DRCT must show that without the information it

19

seeks, DRCT will be unable to adequately prosecute the litigation and vindicate the prisoners' other important rights. *See* Lora v. Bd. of Ed. of City of New York, 74 F.R.D. 565, 584 (E.D.N.Y. 1977) ("While the impact of disclosure on the state and personal interests implicated is legally insignificant, even such minimal intrusion might be sufficient ground for denying discovery if plaintiffs had failed to demonstrate a genuine need for the material...").

At oral argument, DRCT argued that access to the unredacted information is critical because the names of the inmates subjected to in-cell shackling may help DRCT's experts identify individuals with whom they would like to speak and allow its experts to connect multiple documents in the case to fully evaluate the impact of shackling on prisoners.  In response, the DOC argues that DRCT has been provided sufficient information to prove its claims.  (Dkt. #147 at 14).  Based on the representations of the parties, DRCT has been provided with a significant amount of material, including the full medical files and unredacted incident reports for the inmates from whom they have procured authorizations.  Additionally, according to counsel's representations during oral argument, DRCT's experts have been able to speak directly with inmates during recent visits to DOC facilities.

However, the fact that weighs most heavily against an order compelling the DOC to provide the information without authorizations is that DRCT appears to have been provided sufficient information to obtain the authorizations without significant expense.  In its objection, the DOC noted that it has provided DRCT with a list of inmates placed in in-cell restraints during an agreed upon time frame.  (Dkt. #147 at 4).  The list includes the name, inmate number, and current location of each inmate.  Id.  During oral argument, the DOC noted that DRCT may write letters to the inmates who are identified on the list to request a signed authorization.  The DOC argued that this would not be particularly burdensome for DRCT.  Counsel for DRCT did not respond to this assertion.  Absent any indication to the contrary, the Court sees no reason why DRCT is not able to mail a form letter to the inmates on the list explaining the litigation and DRCT's request for a signed authorization.

Considering the privacy interests at stake, the fact that DRCT is already in possession of a significant amount of discovery relevant to their claims, and DRCT has the information necessary to obtain authorization through mailed correspondence, the Court declines to compel the disclosure of the information at issue absent a signed authorization.  The Court has discretion pursuant to Rule 26 of the Federal Rules of Civil Procedure to limit discovery that is cumulative or duplicative.  Pursuant to

this discretion, the Court finds that the relative utility of the information sought by DRCT does not justify an order compelling the production of sensitive health information without the consent of the individual whose information would be disclosed.

F. *The exhibits filed in connection with the motion to compel may remain under seal.*

Lastly, DRCT has filed a motion to seal Exhibits 9-13 of Attorney Shaun deLacy's declaration in support of DRCT's instant motion to compel. (Dkt. #132). A strong presumption against sealing court records arises from the public's right to access court records and proceedings. This presumption is "rooted in both the common law and the First Amendment." Travelers Indem. Co. v. Excalibur Reins. Corp., No. 3:11-cv-1209 (CSH), 2013 WL 4012772, at *2 (D. Conn. Aug. 5, 2013) (citing Nixon v. Warner Commc'ns Inc., 435 U.S. 589, 597-98 (1978)). However, the right of public access is not absolute, and can be overcome by countervailing considerations. Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (internal citations omitted). Additionally, materials submitted in connection with non-dispositive motions, including discovery motions, are entitled to a weaker but "still substantial" presumption of public access. In re Arida, LLC, No. 19-MC-522 (PKC), 2020 WL

8513844, at *1 (S.D.N.Y. Dec. 23, 2020) (citing <u>Brown v.</u> <u>Maxwell</u>, 929 F.3d 41, 49-50, 53 (2d Cir. 2019)).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." <u>DiRussa v. Dean Witter Reynolds Inc.</u>, 121 F.3d 818, 826 (2d Cir. 1997).  In this District, Rule 5(e)(3) of the Local Rules of Civil Procedure requires that an order to seal documents that are entitled to a presumption of public access must be accompanied by "particularized findings demonstrating that sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons."  D. Conn. L. Civ. R. 5(e)(3).

DRCT's motion to seal advises the Court that the exhibits attached to its motion to compel have been designated as "Confidential" under the operative protective order, and that Exhibit 13 contains non-public mental health and medical information.  (Dkt. #132 at 1).  The exhibits at issue are judicial documents because they are "relevant to the performance of the judicial function and useful in the judicial process." <u>Lugosch</u>, 435 F.3d at 119.  However, as the documents are subject to a relatively lower presumption of public access, and because they contain personally identifying information in connection with non-public mental health and medical information, the

privacy interests at stake overcome the presumption of public access.  The request to seal the documents is narrowly tailored to protect those interests.  Accordingly, Exhibits 9-13 of Attorney Shaun deLacy's declaration in support of DRCT's motion to compel (dkt. #133) will remain under seal.

**IV.  Conclusion**

This is not a Recommended Ruling.  This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); D. Conn. L. R. 72.2.  As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 28th day of August, 2024 at Hartford, Connecticut.

_____/s/_____
Robert A. Richardson
United States Magistrate Judge